(No. 40193.—

THE VILLAGE OF PARK FOREST, Appellant, *vs.* JAY D. BRAGG, Appellee.

*Opinion filed Sept. 29, 1967.—Rehearing denied Nov. 27, 1967.*

226

Kluczynski and Ward, JJ., took no part.

Richard W. Hall, Village Prosecutor, and Henry X. Dietch, Village Attorney, both of Park Forest, (Richard W. Hall, of counsel,) for appellant.

Sydney R. Drebin and Marvin E. Aspen, both of Chicago, *amici curiae*.

Harry G. Fins, Mathew L. Salita, and Sidney Z. Karasik, all of Chicago, other *amici curiae*.

Mr. Justice Underwood delivered the opinion of the court:

This case raises a question of first impression in this court—whether a judge has the power to suspend a penalty he has assessed for the violation of a municipal ordinance.

A magistrate of the circuit court of Cook County found the defendant, Jay D. Bragg, guilty of violating two traffic ordinances of the village of Park Forest, one involving driving under the influence of intoxicating liquor and the other relating to careless driving. Fines were assessed in accordance with the ordinances, and five dollars costs were added for each offense. The magistrate then suspended the penalties, making no provision for the duration of the suspension; the village appealed. The First District Appellate Court upheld the suspension (74 Ill. App. 2d 87), and we granted leave to appeal. Defendant has not participated in any of the appellate proceedings herein, and *amici curiae* appointed by the appellate court and this court have presented the arguments in opposition to the appeal and in favor of the magistrate's action before both that court and us.

Before reaching the merits of the appellate court's ruling, it must first be determined whether the village could properly seek review of the magistrate's decision. If violation of a municipal ordinance is subject to Supreme Court Rule 604 (formerly Rule 27(4)), no appeal from the order of suspension could properly be taken. In *Village of Maywood* v. *Houston,* 10 Ill.2d 117, we passed on this precise question and also on the question of whether a double jeopardy problem is created if municipalities may appeal adverse decisions in ordinance cases as in ordinary civil suits. We there held that the village, without violating the defendant's constitutional rights, could properly appeal from a judgment acquitting him, adhering to the classification of an ordinance violation prosecution as being quasi-criminal in character, but civil in form. In passing on the constitutional question, we held that double jeopardy does not bar an appeal by the municipality. *Palko* v. *Connecticut,* 302 U.S. 319, 82 L. Ed. 288.

Subsequent to this decision, the definition of "offense" in the Code of Criminal Procedure was expanded to include

"a violation of * * * any penal ordinance of [the] political subdivisions" of this State. (Ill. Rev. Stat. 1965, chap. 38, par. 102—15.) In light of this broadened definition, and without even citing *Maywood,* the Fourth District Appellate Court recently held that a municipality could not appeal from a decision to which Rule 27(4) (the present Rule 604) did not apply. (*City of Gibson City* v. *McClellan,* 61 Ill. App. 2d 218. See, also, *Town of Bloomington* v. *Murphy,* 73 Ill. App. 2d 417, 419.) In considering these decisions, we express no opinion as to .the applicability to ordinance cases of provisions of the Code of Criminal Procedure other than that which deals with appealability. Compare *City of Highland Park* v. *Curtis,* 83 Ill. App. 2d 218.

Supreme Court Rule 604 enumerates the decisions from which "the State" may appeal in "criminal cases" and was adopted pursuant to section 120—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 120—1), which also speaks in terms of appeals by "the State" in "a criminal case". The second of the quoted phrases is also employed in section 7 of article VI of the Illinois constitution, which provides that "after a trial on the merits in a criminal case, no appeal shall lie from a judgment of acquittal." In our opinion, the correctness of the appellate court's decision in *Gibson City* depends on the meaning of these phrases. Only if "a criminal case" was intended to be synonymous with "offense" and "State" was intended to include the political subdivisions thereof did the appellate court reach the right result; and we do not believe this can fairly be said to represent the legislative intent. Included as "offenses" in the present Code of Criminal Procedure are both what would ordinarily be thought of as "a criminal case"—a case involving violation of "any penal statute of this State"—and what had, prior to the expansion of the definition of "offense" been referred to as quasi-criminal cases—those involving violation of "any penal ordinance

of its political subdivisions." Thus the term "offense", as presently defined, is clearly intended to be broader in scope than the phrase "a criminal case". Consequently, the statute delimiting the areas of appeal in "a criminal case" (Ill. Rev. Stat. 1965, chap. 28, par. 120—1) and our Rule 604, which uses the same phraseology, necessarily encompass a substantially smaller category of cases—only those which involve violations of the general criminal laws—than would be true had the term "offense" been used in the statute and rule. We therefore conclude that expansion of the definition of "offense" in section 102—15 of the Code of Criminal Procedure in no way detracted from the continued viability of the *Maywood* rule. Moreover, the term "State" would not ordinarily be considered as applying both to the State itself and to its political subdivisions, and our conclusion that *Maywood* is still the law finds additional support in the continued use of this term.

Since we hold the village may appeal, we reach the merits of the suspension issue. It is undisputed that there is no statutory authority for the magistrate's action herein, so its propriety depends on his inherent power. In order to avoid application of the civil rule that the magistrate had no inherent power to prevent Park Forest from collecting its money judgment, (see *City of Milwaukee* v. *Stanki,* 262 Wis. 607, 55 N.W.2d 916,) the appellate court emphasized the criminal aspects of ordinance violation cases. By so doing, it runs afoul of the rule which prevails in criminal cases: absent statutory authority a trial court has no inherent power to indefinitely suspend sentences. (*People* v. *Penn,* 302 Ill. 488, 494; *People ex rel. Boenert* v. *Barrett,* 202 Ill. 287, 290.) Thus, if the civil nature of ordinance violation cases is deemed controlling, we are confronted with the rule that the trial court cannot prevent a municipality from collecting a money judgment in its favor without its consent, and, if we emphasize the criminal nature of such a proceeding, the rule prohibiting indefinite suspensions of

sentences applies. Consequently, the decision of the appellate court must be reversed unless there exists in the hybrid nature of an ordinance violation case some feature necessitating a departure from existing rules. No such special feature has been disclosed in any of the cases which our research indicates have considered the precise question raised herein; and these cases generally stand for the proposition that, in ordinance violation cases, the power to indefinitely suspend a sentence is wholly dependent on statute. (*Stanki; Freeman* v. *City of Benton,* 191 Ark. 1131, 89 S.W.2d 738; *City of New York* v. *Hewitt,* 86 N.Y. Supp. 832; 62 Corpus Juris Secundum 703. See, also, *Thompson* v. *State.* 191 Tenn. 221, 232 S.W.2d 42. But, *cf., Zerobnick* v. *City and County of Denver,* 139 Colo. 139, 337 P.2d 11). Nor have the opinion of the appellate court or the briefs of the *amici curiae* pointed out any reasons we consider compelling. We accordingly conclude that the magistrate acted without authority in suspending the sentence he imposed.

In emphasizing the criminal nature of an ordinance violation proceeding, the appellate court implicitly confirmed the power of a municipality to provide for imprisonment as a direct penalty for an ordinance violation. In its petition for leave to appeal, the village has asked us to decide whether such power in fact exists. Such decision, however, is unnecessary to resolution of the problem before us and we express no opinion as to the soundness of this dictum in the appellate court's opinion.

The decision of the First District Appellate Court is reversed and the cause remanded with directions to the trial court to expunge the order of suspension.

*Reversed and remanded, with directions.*

KLUCZYNSKI and WARD, JJ., took no part in the consideration or decision of this case.