88 Ill. App.3d 64 (1980)
410 N.E.2d 410
In re G.B., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
G.B., Respondent-Appellant.)
No. 16053.
Illinois Appellate Court  Fourth District.
Opinion filed September 2, 1980.
*65 Daniel D. Yuhas and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.
Thomas J. Difanis, State's Attorney, of Urbana (Gary J. Anderson and Darryl Pratscher, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Reversed and remanded.
Mr. JUSTICE GREEN delivered the opinion of the court:
This case concerns unusual procedures used to deal with the habitual truancy of a minor of an age subject to compulsory school attendance. Ill. Rev. Stat. 1977, ch. 122, par. 26-1.
The proceedings were initiated by the filing of a juvenile petition in the circuit court of Champaign County on December 1, 1978. It alleged the minor respondent to be in need of supervision because of habitual truancy. On February 8, 1979, the minor admitted the allegations and agreed to a continuance under supervision conditioned upon an order that he attend school. On March 5, 1979, a petition was filed asking to have him held in contempt of court for violating the supervision order by continued truancy. On April 26, 1979, he admitted these allegations and was found to be in criminal contempt. On May 31, 1979, he was placed on probation for that contempt with conditions that he serve 19 days' incarceration at a detention center, pay court costs, and attend school.
On October 3, 1979, a second contempt petition was filed alleging the minor's continued truancy in violation of the contempt probation order and his failure to report to the probation officer as also required by that order. On December 12, 1979, the minor entered into a stipulation admitting the allegations of the latest petition and was again held to be in criminal contempt of court. He subsequently filed a petition to vacate the stipulation and dismiss the petition upon which it was based. The theory of the petition was that the trial court lacked jurisdiction to impose probation as a sanction for the original contempt and thus that court lacked jurisdiction to punish him for violation of the probation order. On December 12, 1979, the petition was denied. On January 21, 1980, the court placed the minor on a further probation for a period of 1 year subject to 60 days' incarceration at the same detention center and the payment of costs of $114.10. The appeal is from that order.
*66 The minor asserts that (1) the appealed order subjecting him to 60 days of incarceration was unduly severe, and (2) the trial court was without power to order him to pay court costs. We also choose to consider whether the court had jurisdiction to originally place the minor on probation for his original contempt, as the validity of the subsequent contempt depends upon the answer to that question.
The decision of the supreme court in In re Baker (1978), 71 Ill.2d 480, 376 N.E.2d 1005, has application to all of the issues here. There, a minor who had run away from home had been declared to be "otherwise in need of supervision" (Ill. Rev. Stat. 1975, ch. 37, par. 702-3) and placed in the custody of the Department of Children and Family Services who, in turn, placed her in a children's home. After the minor was twice absent from the home without leave, a petition was filed requesting that she be held in contempt for violating the court order placing her under supervision. She moved to dismiss on the grounds that the exclusive remedy for the violation of such an order was a further proceeding under section 2-3(d) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702-3(d)). The trial court denied the motion, ruling section 2-3(d) and section 2-2(b) (Ill. Rev. Stat. 1975, ch. 37, par. 702-2(b)) to be unconstitutional. The court then held a hearing and found the minor to be in contempt of court. Rather than directly imposing a sanction, the court then found the minor to be delinquent because of her conviction for contempt and placed her on probation. She appealed.
Because the trial court's decision in In re Baker declared a statute to be unconstitutional, the supreme court had jurisdiction of the minor's direct appeal. It held that the statutory provisions in issue were constitutional, and that a minor could not be found delinquent for contempt of court, but that the trial court's inherent power included use of civil or criminal contempt proceedings to obtain compliance with orders entered against respondent minors in juvenile proceedings. The opinion described the contempt power as being an alternate procedure to that set forth in the Juvenile Court Act. Thus the finding of delinquency was reversed but the finding of contempt was not disturbed.
 1 Although the In re Baker trial court had imposed no sanction, the supreme court opinion stated that the trial court's inherent power extended to both civil and criminal contempt. Historically the difference between the two types has been explained on the basis that (1) civil contempt is for the purpose of coercing a contemnor to take action within his power to perform, and which he is under court order to do, but which he has refused to do, while (2) criminal contempt is for the purpose of punishing for past misconduct which affronts the dignity of the court or impedes its process or proceedings. (People ex rel. Chicago Bar Association v. Barasch (1961), 21 Ill.2d 407, 173 N.E.2d 417; People v. Marcisz (1975), 32 Ill. App.3d 467, 334 *67 N.E.2d 737, aff'd sub nom. Marcisz v. Marcisz (1976), 65 Ill.2d 206, 357 N.E.2d 477.) Here, the sanction twice imposed of probation conditioned upon incarceration was one for criminal contempt.
The opinion in Marcisz written by Mr. Justice Stengel is definitive. It points out that distinction between the two types of contempt is difficult. There, an estranged husband had been enjoined from going to his wife's residence. Upon his second disobedience of the injunction, he was found to have been in criminal contempt. No doubt, a purpose of that contempt was to keep the husband from making further visits to the residence and the court had the power to do so, but the husband's wilful violation of the court order had caused a considerable compromise of the court's authority. Here, too, a principal purpose of the contempt order was to coerce the minor into future school attendance, but the minor's wilful conduct had also infringed upon the authority of the court. Moreover, as in Marcisz, compliance with the court's order could not be made by a single compliance as in the classic civil contempt cases where the contemnor can purge himself by (1) the payment of back alimony (Sullivan v. Sullivan (1973), 16 Ill. App.3d 549, 306 N.E.2d 604), or (2) compliance with antipollution standards (County of Cook v. Lloyd A. Fry Roofing Co. (1973), 13 Ill. App.3d 244, 300 N.E.2d 830). In view of the minor's prior refusal to attend school, permitting him to purge himself by a promise of compliance with the order (City of Park City v. Brosten (1974), 24 Ill. App.3d 442, 321 N.E.2d 15) would not have been an effective procedure.
 2 The court was not in error in treating the contempt as criminal rather than civil, and its action was not too severe for that reason.
 3 We next consider the question of whether the trial court had jurisdiction to impose probation as a sanction. If it had no such power to impose the first probation, it could not properly have entered the instant contempt order. Although incarceration or a fine are the usually described sanctions, the sanction of probation has been approved in United States v. Sullens (S.D. Miss. 1929), 36 F.2d 230, Lathrop v. Lathrop (1959), 57 N.J. Super. 532, 155 A.2d 106, and Evans v. Unruh (1961); 79 S.D. 53, 107 N.W.2d 917. In Lathrop, the court stated that use of probation was justified not only on statutory grounds but also as a part of the inherent chancery power of the court. Although this precedent is meager, we are not prepared to hold that a court is without jurisdiction to place a criminal contemnor on probation.
However, we conclude that probation is a sentence that should rarely be imposed for criminal contempt. Probation focuses upon rehabilitation, while the purpose of sanctioning for criminal contempt is to punish to uphold the dignity of the court. We are concerned with the procedure used here where a series of probations were imposed upon a juvenile already under a supervisory order of the court. We recognize the parallel procedures under the Juvenile Court Act and of citation for criminal contempt *68 that were available when the minor violated the supervisory order. When, under those circumstances, the contempt route is selected, a criminal contempt is found to have taken place, and, as here, the court deems the conduct serious enough to require incarceration, we deem the appropriate procedure to ordinarily be for the court to sentence the contemnor to reasonable imprisonment. Any program focusing upon rehabilitation can better be furnished under the terms of the Juvenile Court Act to which the minor is still subject.
Argument has been made on behalf of the minor that the court erred in permitting the contempt procedure to be used at all before attempting other procedures available under the Juvenile Court Act. A similar argument was made in In re Baker, and that court responded, "Since the contempt power exists and there is a factual basis for that holding, the order cannot be said to be erroneous simply because an alternative route to the same objective was available." 71 Ill.2d 480, 485, 376 N.E.2d 1005, 1007.
 4 The circuit court had jurisdiction to enter the May 31, 1979, probation order. As no appeal was taken from that order, its propriety cannot be attacked in these proceedings. The January 21, 1980, contempt order is before us on appeal. The minor objects to the severity of that order rather than the use of the sanction of probation. However, we choose to consider the propriety of ordering probation and, for the reasons stated, hold that under the circumstances here, it was an abuse of discretion for the court to have placed the minor on probation. Accordingly, we reverse the January 21 order and remand to the trial court to hold a new sentencing hearing.
As the question of the propriety of the incarceration previously imposed and the requirement that the minor pay court costs will likely arise again, we deem it appropriate to speak to those issues.
 5 Punishment for criminal contempt should reflect the least possible power necessary to achieve its purpose. (In re Michael (1945), 326 U.S. 224, 90 L.Ed. 30, 66 S.Ct. 78; Green v. United States (1958), 356 U.S. 165, 2 L.Ed.2d 672, 78 S.Ct. 632.) Here, the evidence showed that the minor had been flagrant in his refusal to attend school after having been ordered to do so and previously found in contempt for wilfully failing to do so. However, we deem the incarceration in a detention facility imposed here to be sufficiently severe in length as to approach the outer limits of that which can be upheld upon review.
 6 Costs may not be assessed unless authorized by statute. (People v. Nicholls (1978), 71 Ill.2d 166, 374 N.E.2d 194.) We cannot ascertain from the record what portion of the costs arose from the juvenile proceedings and what part arose from the criminal contempt proceedings, but as payment of the same sum was ordered as a condition of the original criminal probation, it appears likely that at least some of the costs arise from the juvenile proceedings. As there is no statutory provision for *69 assessment of such costs, any such assessment would be error even though payment be merely a condition of probation.
Assessment of costs incurred in the criminal contempt proceeding is another matter. Section 13 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1979, ch. 38, par. 180-3) states:
"When any person is convicted of an offense under any statute, or at common law, the court shall give judgment that the offender pay the costs of the prosecution." (Emphasis added.)
Section 1-3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 1-3) states:
"Applicability of Common Law. No conduct constitutes an offense unless it is described as an offense in this Code or in another statute of this State. However, this provision does not affect the power of a court to punish for contempt or to employ any sanction authorized by law for the enforcement of an order or civil judgment."
The combined effect of these two provisions shows a legislative intent to classify criminal contempt as an offense at common law and to make the contemnor subject to assessment of costs. Any assessment of costs which were connected with the contempt proceedings would be proper.
The order of January 21, 1980, placing the minor on probation is reversed and the cause is remanded for further proceedings.
Reversed and remanded.
WEBBER, J., concurs.
Mr. JUSTICE TRAPP, concurring in part and dissenting in part:
I concur in the reversal of the trial court's order and remandment for a new sentence hearing. I dissent from the developed conclusion that a trial court exercising inherent powers in civil or criminal contempt may further call upon inherent or nonstatutory powers to impose probation as a sanction for the contempt found. Whatever weight is given in the majority opinion to the admittedly meager precedent cited is overwhelmed by the contrary rule in Illinois that there is no power to impose probation except upon the authority of a statute. See 15 Ill. L. & Prac. § 818 (1968).
Here, the focus is upon imposing probation when a minor has been found in need of supervision. Implicit in the opinion is the further issue of whether probation may be ordered as a sanction in every incident where an individual has been held to be in contempt of court.
While the concept of probation has been substantially altered through legislative action, and under the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001-1-1 et seq.) has acquired the status of a *70 sentence, historically probation was deemed to be a suspension of a sentence of fine or imprisonment.
Under the early decisions, a trial court lost jurisdiction of the cause if sentence was not promptly imposed. (People v. Cahill (1921), 300 Ill. 279, 133 N.E. 228; People v. Penn (1922), 302 Ill. 488, 135 N.E. 92.) In Village of Park Forest v. Bragg (1967), 38 Ill.2d 225, 230 N.E.2d 868, a magistrate imposed fines but ordered such fines suspended. The supreme court found no statutory authority to suspend fines and held that a trial court has no inherent power to indefinitely suspend sentence. (See People v. Barrett (1903), 202 Ill. 287, 67 N.E. 23.) Within such historical framework the court in Penn stated that the power to grant or impose probation does not belong to the courts except as it is granted in the probation act.
Accepting as a premise that the trial court has no inherent power to impose probation as an adjunct of its inherent powers in contempt, one finds here that it is not contended that probation was imposed by authority of any statute.
The Juvenile Court Act is framed to provide "for the protection, guidance, care, custody and guardianship of the persons of boys and girls who are delinquent, otherwise in need of supervision, neglected or dependent; to prescribe court procedure relating thereto; * * *." Ill. Rev. Stat. 1979, ch. 37.
Section 5-2(1)(b) of the Act (Ill. Rev. Stat. 1979, ch. 37, par. 705-2(1)(b)) provides the forms of disposition as to minors "found to be in need of supervision." Section 5-3 provides for probation as to delinquent minors, but that disposition is not provided as to minors in need of supervision. We note that within the Juvenile Court Act the statute does not authorize incarceration as a condition of probation, and thus differs from the provisions of the Unified Code of Corrections in section 5-6-3 (Ill. Rev. Stat. 1979, ch. 38, par. 1005-6-3), yet the order of the trial court here imposed incarceration as a condition of probation which had not been authorized by statute. It is to be noted that in both the Juvenile Court Act, section 5-3 (Ill. Rev. Stat. 1979, ch. 37, par. 705-3), and the Unified Code of Corrections, section 5-6-3 (Ill. Rev. Stat. 1979, ch. 38, par. 1005-6-3), the terms and conditions of probation are legislatively determined and specified in detail. In imposing probation incident to exercising an "inherent power," the trial court does not necessarily act within a legislative prescription or program.
In People v. Breen (1976), 62 Ill.2d 323, 342 N.E.2d 31, the supreme court acting under its supervisory power and within the context of the Unified Code of Corrections reviewed an order of "supervision" with restitution. It appears that such order was without statutory authority but imposed under a prevailing local practice. The court stated that there is no merit in the contention that the judiciary possesses the inherent power to *71 impose an obligation not provided by law. The court applied its Rule 61(c)(18) which, in pertinent part, provides:
"In imposing sentence, a judge should follow the law and should not compel persons brought before him to submit to some act or discipline without authority of law, whether or not he may think it would have a beneficial corrective influence." (Ill. Rev. Stat. 1979, ch. 110A, par. 61(c)(18).)
See also People v. DuMontelle (1978), 71 Ill.2d 157, 374 N.E.2d 205.
The opinion of In re Baker (1978), 71 Ill.2d 480, 376 N.E.2d 1005, does not support the majority opinion. As indicated there, the order imposing probation was bottomed upon an adjudication of delinquency. The trial court undertook to adjudicate the minor delinquent as a sanction or judgment in the exercise of its inherent contempt power. The trial court's adjudication of delinquency, however, was held to be contrary to the intent of the Juvenile Court Act and not a proper order or sanction upon a finding of contempt. The order here imposing probation is similarly contrary to the intention of the Juvenile Court Act as to minors in need of supervision and, similarly, is not a lawful sanction upon a finding of contempt.