THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT H. SPENCER, Defendant-Appellant.

Fifth District   No. 5—02—0638

Opinion filed April 6, 2004.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Linda D. Woloshin and Lionel W. Weaver, Assistant Attorneys General, of counsel), for the People.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, Robert H. Spencer, was convicted of one count of unlawful manufacture of a controlled substance (720 ILCS 570/401(a)(6.5)(B) (West 2000)). The trial court sentenced him to 12 years in prison and imposed a $3,000 drug assessment, a $200 street value fine, a $100 trauma fine, and a $100 crime lab fee. On appeal, the defendant contends that (1) the State failed to lay a sufficient foundation for a forensic scientist's testimony that the substance he tested contained methamphetamine, (2) the court improperly determined the street value of the seized methamphetamine without evidence of its value, and (3) the court erred by failing to apply a $5-per-day credit against the defendant's fines. We affirm the defendant's conviction, but we vacate his street value fine and remand for further proceedings consistent with this order.

## I. BACKGROUND

On July 5, 2001, Montgomery County sheriff's deputies went to the home of David Lowis to execute arrest warrants for Adam Lowis (David Lowis's son) and Joe Brown (David Lowis's girlfriend's brother). Three officers entered David Lowis's house and three entered a trailer parked on the property. The defendant answered the door of the trailer. He was wearing latex gloves. The officers found equipment indicative of methamphetamine manufacture. The officers seized ingredients and objects used in the manufacture of methamphetamine that they found on the property. Among the items of evidence seized were a wad of coffee filters (which became People's Exhibit 17 at the trial) and a glass jar containing a clear liquid (a sample of which became People's Exhibit 18).

On September 13, 2001, the defendant was indicted on one count each of criminal drug conspiracy (720 ILCS 570/405.1 (West 2000)), possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(6.5)(B) (West 2000)), unlawful possession of a controlled substance (720 ILCS 570/402(a)(6.5)(B) (West 2000)), and unlawful manufacture of a controlled substance (720 ILCS 570/401(a)(6.5)(B) (West 2000)). He was taken into custody on September 17. On September 27, the defendant posted a $25,000 bond and was released.

On March 7, 2002, the defendant was arrested for possession of methamphetamine in Shelby County. As a result, on March 28, the State filed a petition to increase the amount of his bond. On April 1, the trial court raised the defendant's bond to $100,000 but released him on his own recognizance with the condition that he enter a residential drug-abuse-treatment program. On April 8, the defendant was released from a detoxification program until a bed became available. A docket entry indicates that he was to be held on a $100,000 bond. On April 19, a bed became available at Our House, a residential drug-rehabilitation program in Charleston, Illinois, and the defendant was released so he could enter the facility's treatment program.

On May 13, 2002, the probation officer assigned to monitor the defendant's compliance with the terms of his bond notified the State's Attorney's office that the defendant had left Our House. On May 23, the State filed another motion to increase the defendant's bond, on the basis that he had failed to comply with the conditions of his earlier bond. The defendant was taken back into custody on May 28, and the court granted the State's motion and increased the defendant's bond to $200,000 on June 3.

On July 1, 2002, the defendant pleaded guilty in the Shelby County case and immediately began serving a one-year sentence in the Department of Corrections (DOC).

The defendant's trial in this matter took place over two days, on July 8 and 9, 2002. The jury returned a verdict of guilty on all four charges; however, the trial court entered a judgment of conviction only on the count for unlawful manufacture of a controlled substance (720 ILCS 570/401(a)(6.5)(B) (West 2000)). At the August 27 sentencing hearing, the court heard arguments regarding the proper amount of sentence credit the defendant was to receive for his time in pretrial detention. The State argued that he was entitled only to 62 days he had spent in jail before pleading guilty to the Shelby County possession charge, while the defendant contended that he was entitled to sentence credit for the entire 110 days he had been in custody prior to receiving a sentence in the instant case. On August 30, 2002, the trial court sentenced the defendant to 12 years' imprisonment in the DOC, with 62 days' credit. The court also imposed a drug assessment of $3,000, a street value fine of $200, a crime lab fee of $100, and a trauma fine of $100. The court did not apply a sentence credit of $5 per day to any of these fines. The defendant filed a motion to reconsider his sentence on September 4, 2002, which the court denied. He then filed the instant appeal.

## II. ANALYSIS

### A. Insufficient Foundation

The defendant contends that the State failed to lay a sufficient foundation for the testimony of forensic scientist Michael Cravens that People's Exhibits 17 and 18 contained methamphetamine. Although he failed to object to the testimony at the trial, the defendant urges us to consider the insufficient foundation under the plain error doctrine. We decline to do so.

At the trial, Cravens identified People's Exhibit 18 and testified that he had performed infrared spectra photometry and gas chromatography/mass spectrometry (GCMS) tests on the clear liquid. These tests indicated the presence of methamphetamine in the liquid. Likewise, Cravens identified People's Exhibit 17 and testified that he had performed a GCMS test on a rinse he had made by dissolving portions of the coffee filters in methyl alcohol. The result indicated the presence of methamphetamine on or in the filter paper. Cravens testified that he knew the results of his testing to be accurate "from the results obtained from matched existing standards of moleculars." Although he testified that these standards are reasonably and generally relied upon by experts in his field, he did not testify that the tests he performed were themselves reasonably and generally relied upon by experts in forensic science. Nor did Cravens testify that the equipment he used in performing the tests had been properly calibrated or tested.

■ The proponent of the testimony of an expert witness such as Cravens must show that the facts or data on which the expert's opinion is based are of a type reasonably and generally relied on by experts in the same field. *People v. Bynum*, 257 Ill. App. 3d 502, 513, 629 N.E.2d 724, 732 (1994). In addition, where expert testimony is based on a mechanical or electronic device, the expert must offer some foundational proof that the device was functioning properly when it was used. *Bynum*, 257 Ill. App. 3d at 514, 629 N.E.2d at 732. Had the defendant objected to Cravens' testimony that the substances he tested contained methamphetamine, admitting the testimony without further foundational testimony would have constituted reversible error.

■ The defendant, however, did not object. Ordinarily, a party that fails to raise an issue by a timely objection at the trial waives that issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). By failing to object, the defendant deprived the State of an opportunity to correct the problem by simply asking Cravens additional questions to lay a full and proper foundation for his testimony. Because an objection for an insufficient foundation is so easily cured,

Illinois courts have repeatedly held that the waiver rule is particularly appropriate where a defendant argues that the State failed to lay a sufficient foundation. *People v. Rodriguez*, 313 Ill. App. 3d 877, 887, 730 N.E.2d 1188, 1196 (2000); *Bynum*, 257 Ill. App. 3d at 514-15, 629 N.E.2d at 732.

■ The defendant, however, attempts to couch his argument in terms of the sufficiency of the evidence. As he correctly notes, a defendant cannot waive an objection to the sufficiency of the evidence. See *People v. Hall*, 194 Ill. App. 3d 532, 535, 551 N.E.2d 763, 765 (1990). We find his argument unavailing. The instant case is virtually indistinguishable from *Bynum*. There, an Illinois State Police forensic scientist failed to testify that the instruments she had used to test a substance confiscated from the defendant were properly calibrated or that the types of tests she had conducted were reasonably and generally relied on in her field. *Bynum*, 257 Ill. App. 3d at 514, 629 N.E.2d at 732. There, as here, in order to obtain a conviction the State was required to prove that the substance was, in fact, a controlled substance. However, given the ease with which the State could have corrected the problem by asking additional foundational questions, the *Bynum* court found the issue to be waived by the defendant's failure to object on the proper grounds. *Bynum*, 257 Ill. App. 3d at 515, 629 N.E.2d at 733. We likewise conclude that the defendant here has waived this argument by his failure to object to Cravens' testimony at all.

## B. Street Value Fine

■ The defendant contends that the trial court erred in setting his street value fine at $200 without any evidentiary basis. The State counters that the defendant has waived this issue on appeal by failing to object at the sentencing hearing and that the defendant stipulated to the value. We agree with the defendant.

On August 29, 2002, the trial court entered an order that stated, in relevant part:

> "Pursuant to the stipulation by the State and the defendant of the testimony of the law enforcement officer in regard to 'street value', a statutory fine of $200 pursuant to this section [(730 ILCS 5/5—9—1.1 (West 2000))] is assessed as part of the judgment order in this cause ***."

However, neither a formal stipulation nor any law enforcement testimony regarding the street value of the seized methamphetamine appears in the record. It appears, rather, that the court accepted the State's contention at the sentencing hearing that $200 represented the appropriate fine.

The defendant offered no evidence or argument pertaining to the street value of the methamphetamine and did not object when the

court set the fine at $200. Those Illinois courts to consider analogous situations have universally concluded that the failure to support a street value fine with any evidentiary basis constitutes plain error. *People v. Gonzalez*, 316 Ill. App. 3d 354, 364, 736 N.E.2d 157, 165 (2000); *People v. Simpson*, 272 Ill. App. 3d 63, 66, 650 N.E.2d 265, 267 (1995); *People v. Otero*, 263 Ill. App. 3d 282, 284, 635 N.E.2d 1073, 1075 (1994). This is because the legislature intended for courts to impose the fine with some concrete evidentiary basis. *Otero*, 263 Ill. App. 3d at 287, 635 N.E.2d at 1076. Thus, where the fine is set with no such evidentiary basis, the court does not comply with the mandate of the statute. *Simpson*, 272 Ill. App. 3d at 66, 650 N.E.2d at 267. We therefore vacate the defendant's street value fine.

## C. Presentence Incarceration Credit

■ The trial court gave the defendant 62 days of credit toward his prison sentence, for the time he spent in pretrial detention prior to serving his sentence for the Shelby County methamphetamine possession charge. He did not receive any credit against his fines. The defendant contends that he is entitled to a $5-per-day credit for the entire time he was incarcerated prior to the sentencing on the instant charge. The State concedes that the defendant is entitled to a $5-per-day credit against his fines, and we agree. See 725 ILCS 5/110—14 (West 2000) (a defendant incarcerated on a bailable offense for which he does not post a bond is entitled to a credit of $5 per day against any fine imposed for the offense); *People v. Stevens*, 125 Ill. App. 3d 516, 519, 466 N.E.2d 296, 298-99 (1984) (sentence credits are applicable both to the prison term and any fines imposed). The State contends, however, that he is entitled only to 62 days of credit.

In *People v. Robinson*, 172 Ill. 2d 452, 454, 667 N.E.2d 1305, 1306 (1996), the Illinois Supreme Court was called upon to determine whether a defendant who commits a crime while out on bond awaiting a trial on a previous charge is entitled to in-custody credit against both sentences for the time he was simultaneously in pretrial detention on both charges. Although the issue with which the court was confronted was whether the defendant could receive credit against both sentences for the same period of time, the court analyzed when the defendant was in pretrial custody on the first charge in order to answer that question. Thus, we find its analysis dispositive of the issue before us.

The relevant facts in *Robinson* were nearly identical to those in the case at bar. There, the defendant was arrested for armed robbery and taken into custody while he was out on bond awaiting a trial on murder charges. *Robinson*, 172 Ill. 2d at 454-55, 667 N.E.2d at 1306.

The State filed a petition to increase his bond in the murder case, which the trial court granted. On January 21, 1988, five days after he was incarcerated as a result of the armed robbery charge, the defendant surrendered in exoneration of the bond previously posted for the murder charge. *Robinson*, 172 Ill. 2d at 455, 667 N.E.2d at 1306. On April 17, 1991, he pleaded guilty to the armed robbery charge and began serving a sentence for it that day. Because he received credit for the period of time he had spent in pretrial custody, he completed his armed robbery sentence on June 21, 1991. *Robinson*, 172 Ill. 2d at 455, 667 N.E.2d at 1306. At that time, he filed a motion to reduce his bond on his still-pending murder charge, which was granted. On July 25, 1991, he posted a second bond and was released. *Robinson*, 172 Ill. 2d at 455, 667 N.E.2d at 1306.

The supreme court framed the issue before it as "the basis of [the] defendant's custody from January 21, 1988, through April 17, 1991." *Robinson*, 172 Ill. 2d at 458, 667 N.E.2d at 1308. That was the time period during which his bond in the murder charge had been revoked and he was in prison awaiting a trial on both charges. Whether he was in pretrial detention on the armed robbery charge was not at issue; he had already received credit against his armed robbery sentence for this period of time. See *Robinson*, 172 Ill. 2d at 455, 667 N.E.2d at 1306. Rather, the supreme court had to determine whether he was *also* in custody on the murder charge during the relevant period. In concluding that he was, the court explained:

> "[W]hen a defendant is out on bond on one offense and is subsequently arrested on a second offense, that defendant is returned to custody on the first offense when his bond is withdrawn or revoked. [Citation.] When that event occurs, the defendant is then considered to be in simultaneous custody on both charges. [Citation.]
>
> *** [W]e believe that we must acknowledge the reality of [the] defendant's surrendering in exoneration of his first bond. *Even if [the] defendant had not been incarcerated on the armed robbery charge, he would have remained in custody on the murder offense as a result of his failure to post bond.*" (Emphasis added.) *Robinson*, 172 Ill. 2d at 459, 667 N.E.2d at 1308.

The State relies upon language in *Robinson*—pointing out that the defendant there "was simultaneously in pretrial custody" on two charges—to argue that the defendant in this case is not entitled to a credit for the period during which he was serving his sentence for the Shelby County methamphetamine possession charge. See *Robinson*, 172 Ill. 2d at 459, 667 N.E.2d at 1308. The State is correct in contending that once the defendant was sentenced to one year in prison for

the Shelby County charge on July 1, 2002, he was no longer in pretrial detention for that charge. The issue, however, is not his status in the Shelby County case; rather, the issue is whether he remained in custody on the charges in the instant case. We hold that he did.

In *Robinson*, the supreme court noted that the defendant had spent a total of 1,282 days in custody between January 21, 1988, the date he surrendered in exoneration of the original bond in his murder case, and July 25, 1991, when he was again released on bond following the completion of his armed robbery sentence. *Robinson*, 172 Ill. 2d at 455, 667 N.E.2d at 1306. That included the period of time when he was serving the sentence for armed robbery and the period during which he was awaiting a trial on both charges. Although the court's focus, as we have noted, was on the period during which he was awaiting a trial on both charges, the court concluded that he was entitled to a sentence credit for the entire 1,282 days. *Robinson*, 172 Ill. 2d at 463, 667 N.E.2d at 1310. The court reached this result without discussion. We note, however, that the court's rationale logically applies with equal force to his entire detention—that is, were the defendant not in prison serving his sentence for the subsequent charge, he would still remain in custody on the original charge for the failure to post bond. Thus, he was in pretrial detention on the first charge while simultaneously serving the sentence for his second. Similarly, were the defendant in this case not serving his sentence for possession in the Shelby County case, he still would have remained in custody as a result of his failure to post a bond in the Montgomery County case. Therefore, as the defendant points out, he would have been entitled to a sentence credit for the contested period if his sentence in this case were to be served concurrently with his sentence in the Shelby County case. See *People v. Plair*, 292 Ill. App. 3d 396, 401, 686 N.E.2d 28, 33 (1997) (finding *Robinson*'s conclusion that a defendant may receive credit against two sentences for time spent simultaneously in detention on two charges inapplicable to concurrent sentences).

This court has applied the rationale of *Robinson* to determine the amount of credit to be applied against a defendant's fines. *People v. Finley*, 293 Ill. App. 3d 377, 388, 687 N.E.2d 1154, 1161-62 (1997). The State contends that *Finley* was wrongly decided and asks us to overrule it. We disagree and decline to do so. As the State points out, the $5-per-day sentence credit is applicable only for time spent incarcerated on a bailable offense. 725 ILCS 5/110—14 (West 2000). Once a defendant is sentenced and begins to serve his sentence, he is no longer incarcerated on a bailable offense. However, the State's argument overlooks the fact that the defendant would be entitled to no credit at all against his fines in the instant case were he incarcer-

ated solely on the Shelby County charge. See *Robinson*, 172 Ill. 2d at 458-59, 667 N.E.2d at 1308 (noting that a defendant who is incarcerated upon arrest for a subsequent charge committed while on bond from an earlier offense is not returned to custody on the original charge until the bond on that charge is revoked or surrendered). The only basis for the defendant's eligibility for the credit is the fact that he was in custody *on the instant charge* during the relevant time period. The instant offense did not cease to be a bailable offense until the Montgomery County court sentenced the defendant on August 30. Because, as the defendant points out, no fines were assessed against him in the Shelby County case, the concerns this court expressed in our interpretation of *Robinson* in *Plair* are not implicated here. See *Plair*, 292 Ill. App. 3d at 401, 686 N.E.2d at 33 (allowing sentence credit against consecutive sentences for the same time period "essentially allows a defendant to receive credit for double the amount of time served and converts much of a consecutive sentence into a concurrent one"). Thus, the defendant is entitled to a $5-per-day credit for the entire period of time he was in custody awaiting the trial and the sentencing in this case, including the period during which he was serving his sentence in the Shelby County case.

As noted, the trial court gave the defendant a sentence credit for 62 days he spent in custody up to and including July 1, 2002, the day he pleaded guilty and began serving his sentence in the Shelby County case. The defendant contends that he is entitled to a total of 110 days of credit, including the time he spent in custody on the instant charges while simultaneously serving his Shelby County sentence. We are unsure how the trial court or the defendant arrived at these figures.

We conclude that the defendant is entitled to 124 days' sentence credit. The presentence investigation report shows that the defendant was in custody for the following periods for this offense:

> 9/17/01 through 9/27/01 (11 days)
> 4/08/02 through 4/19/02 (12 days)
> 5/28/02 through 8/27/02 (92 days).

This totals 115 days. In addition, the trial court, at the sentencing hearing, properly awarded the defendant an additional nine days' credit for time in custody on the original charges for this offense (No. 01—CF—119; July 5, 2001, through July 13, 2001). Thus, he is entitled to a total credit of 124 days, which results in a reduction of $620 against one of his fines.

## III. CONCLUSION

For the foregoing reasons, we affirm the defendant's conviction, but we vacate his street value fine and remand this cause to the trial

court with directions to determine the street value of the methamphetamine and apply the $5-per-day credit to that fine or the defendant's drug assessment, in accordance with this opinion.

Affirmed in part and vacated in part; cause remanded with directions.

HOPKINS and WELCH, JJ., concur.