FIFTH DIVISION

October 15, 2004

No. 1-03-1629

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

FRANK EDWARDS,

Defendant-Appellant.

)))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Stanley J. Sacks,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:
 

Defendant Frank Edwards was convicted of armed robbery without a firearm and vehicular invasion and sentenced to eight years in prison.  On appeal, defendant questions the constitutionality of section 5-4-3(a-5) of the Unified Code of Corrections (the Code) (730 ILCS 5/5-4-3(a-5)(West 2002)), which requires convicted felons to submit specimens of blood to the Illinois Department of State Police for inclusion in both a state and a national DNA database.  Edwards contends that this statute violates his fourth amendment right to be free from unreasonable searches and seizures.  Because we find that the government’s interest in creating and maintaining a DNA database to identify felons outweighs defendant’s privacy interest, we hold that the statute does not violate defendant’s fourth amendment rights.

I.  BACKGROUND

On September 19, 2002, defendant approached Angel Gonzales-Flores while the latter man’s car was stopped at a red light.  At trial, Gonzales-Flores testified that defendant offered to perform sexual activity in exchange for money.  Gonzales-Flores refused this offer, whereupon defendant grabbed him by the arm and brandished a knife.  Upon seeing the knife, Gonzales-Flores reached for his cellular phone.  Defendant subsequently reached for the victim’s phone, removed Gonzales-Flores’ keys from the car’s ignition and demanded money.  Gonzales-Flores reached for his wallet and gave defendant $25.  Defendant then threw back the items he took from Gonzales-Flores.  Gonzales-Flores proceeded to his next jobsite, where he contacted the police.  Although at trial defendant denied having a knife, a knife was recovered from him upon his arrest.  A jury found defendant guilty of armed robbery without a firearm and vehicular invasion.  At sentencing, the trial court informed defendant that because defendant was a convicted felon, he was required to “submit blood, skin or urine for DNA analysis.”
(footnote: 1)
 On appeal, defendant contends that the warrantless and suspicionless extraction of his blood for the DNA database violates his right to be free from unreasonable searches and seizures.  Defendant asserts that blood extraction is fundamentally different from fingerprinting because it is more intrusive, and he points out that while prisoners have a reduced right to privacy, they do not forfeit all of their privacy rights.  Further, defendant argues that because he is a nonviolent and nonsexual offender, his DNA is unlikely to be used to help solve any past or future crimes, and he contends that the sole objective of this statute as applied to him is to further law enforcement purposes.  

II.  FOURTH AMENDMENT

Defendant contends that section 5-4-3(a-5) is unconstitutional because it violates his fourth amendment rights.  The fourth amendment, which is applicable to the states through the fourteenth amendment, gives people the right to be free from unreasonable searches and seizures.  U.S. Const., amends. IV, XIV.  The Illinois Supreme Court has acknowledged that the fourth amendment provides the same level of protection as the search and seizure provision in article I, section 6, of the Illinois Constitution.  Ill. Const. 1970, art. I, § 6; 
People v. Lampitok
, 207 Ill. 2d 231, 240, 798 N.E.2d 91, 99 (2003).  The United States Supreme Court also has held that analysis of a biological sample is a search under the fourth amendment. 
Skinner v. Railway Labor Executives Ass’n
, 489 U.S. 602, 616, 103 L. Ed. 2d 639, 659, 109 S. Ct. 1402, 1412 (1989).  

The fourth amendment requires that searches and seizures be reasonable.  A search and seizure is ordinarily unreasonable if no individualized suspicion of wrongdoing exists.  
City
 
of Indianapolis v. Edmond
, 531 U.S. 32, 37, 148 L. Ed. 2d 333, 340, 121 S. Ct. 447, 451 (2000).  However, not all warrantless searches are unreasonable.  The United States Supreme Court has recognized three narrow exceptions where a search is reasonable absent individualized suspicion: limited administrative searches, certain roadblocks, and “special needs” searches.  
Edmond
, 531 U.S. at 37, 148 L. Ed. 2d at 340, 121 S. Ct. at 451-52.  Under the special needs analysis, the Supreme Court has stated that a search can still be reasonable in the absence of probable cause “ ‘when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.’ ”  
Vernonia School District 47J  v. Acton
, 515 U.S. 646, 653, 132 L. Ed. 2d 564, 574, 115 S. Ct. 2386, 2391 (1995), quoting 
Griffin v. Wisconsin
, 483 U.S. 868, 873, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168 (1987).  
Acton
 held that the special needs employed in a public school setting justified suspicionless searches of student-athletes for drugs.  
Acton
, 515 U.S. at 653, 132 L. Ed. 2d at 574, 115 S. Ct. at 2391.  Other situations that have met the special needs test have included drug and alcohol tests for railway employees involved in train accidents and drug tests for United States customs employees seeking transfers or promotions to certain positions.  
Skinner, 
489 U.S. at 620, 103 L. Ed. 2d at 661-62, 
109 S. Ct. at 1415
; 
National Treasury Employees Union v. Von Raab
, 489 U.S. 656, 666, 103 L. Ed. 2d 685, 702, 109 S. Ct. 1384, 1391 (1989).  

Warrantless and suspicionless searches for ordinary law enforcement purposes were found to violate the fourth amendment in 
Edmond
 and also in 
Ferguson v. City of Charleston
, 532 U.S. 
67, 85, 149 L. Ed. 2d 205, 221, 121 S. Ct. 1281, 1292 (2001).  
Edmond,
 531 U.S. at 48, 148 L. Ed. 2d at 347-48, 121 S. Ct. at 458.  
The United States Supreme Court found that the special needs test failed in both of these cases.  
Ferguson
,
 
532 U.S. at 84, 149 L. Ed. 2d 220, 121 S. Ct. at 1291-92;  
Edmond
, 531 U.S. at 41-42, 148 L. Ed. 2d at 343, 121 S. Ct. at 454.  
Edmond
 involved the random searches of cars for drugs with a police-trained dog, which were deemed searches for ordinary criminal wrongdoing and thus held unconstitutional.  
Edmond
, 531 U.S. at 35, 148 L. Ed. 2d at 339, 121 S. Ct. at 451.  The Supreme Court likewise rejected the methods used in 
Ferguson
, which involved the use of pregnant hospital patients’ samples to determine cocaine use; if the patient tested positive for cocaine, the patient was reported to law enforcement authorities.  
Ferguson, 
532 U.S. at 70, 149 L. Ed. 2d at 211, 121 S. Ct. at 1284. 

Case Law Addressing DNA Extraction

Numerous courts have addressed the constitutionality of DNA extraction statutes under the fourth amendment.  
People v. Garvin
, 349 
Ill. App. 3d
 
845, 812 N.E.2d 773, 781 (2004) (listing statutes and cases from all 50 states).  Two approaches have emerged for evaluating the constitutionality of such statutes.  Some courts have relied on a special needs test, while other courts have used a balancing test.  See, 
e.g., Green v. Berge
, 354 F.3d 675 (7th
 Cir. 2004); 
Jones v. Murray
, 962 F.2d 302 (4th Cir. 1992)
; Garvin
, 349 
Ill. App. 3d
 at 855, 812 N.E.2d at 782; 
People v. Wealer
, 264 Ill. App. 3d 6, 15, 636 N.E.2d 1129, 1135 (1994).  Recently, the Ninth Circuit Court of Appeals noted in 
United States v. Kincade
, No. 02-50380, at 28-29 (August 18, 2004), that the Second, Seventh and Tenth Circuits have used the special needs analysis to uphold the constitutionality of DNA collection statutes, while the Fourth and Fifth Circuits and one Seventh Circuit judge have employed a totality of the circumstances test or a balancing approach.  Courts applying the special needs test have stated that a special need, beyond the ordinary bounds of law enforcement, must be found before the balancing test can be applied.  
Ferguson
, 532 U.S. at 78, 149 L. Ed. 2d at 216, 121 S. Ct. at 1288; 
Edmond
, 531 U.S. at 47, 148 L. Ed. 2d at 347, 121 S. Ct. at 457; 
New Jersey v. T.L.O
., 469 U.S. 325, 351, 83 L. Ed. 2d 720, 741, 105 S. Ct. 733, 748 (1985) (Blackmun, J., concurring).

1.  
Federal Decisions

Federal case law has upheld the constitutionality of DNA extraction statutes.  In 
Kincade
, upon rehearing 
en banc
,
 
a plurality of the Ninth Circuit 
upheld the constitutionality of the DNA profiling of certain conditionally released federal prisoners.  
Kincade
, slip op. at 30.  The court relied on the principle that parolees and those subject to conditional release are not entitled to the same rights and privileges as those possessed by the general public.  
Kincade
, slip op. at 30-31.  The
 Kincade
 court weighed the totality of circumstances, specifically the defendant’s diminished expectations of privacy, the minimum intrusion of a blood test and society’s overwhelming interest that a parolee complies with the requirements of release.  
Kincade
, slip op. at 43.  The court stated that the DNA Analysis Backlog Elimination Act of 2000 (the DNA Act) (42 U.S.C. § 14135a 
et seq
.) served society’s “overwhelming interest” in ensuring that parolees comply with release requirements and noted that parolees can be identified if they commit a crime while on release.  
Kincade
, slip op. at 41.  

However, four justices dissented from that view, cautioning
 that the plurality’s decision puts all citizens at risk of having their DNA permanently on file with the government and opens the door to suspicionless searches conducted for law enforcement purposes.  
Kincade
, slip op. at 50 (Reinhardt, J., dissenting, joined by Pregerson, Kozinski, and Wardlaw, JJ.).  The dissent noted that the DNA Act’s primary purpose is to collect information for ordinary law enforcement purposes.  
Kincade
, slip op. at 74 (Reinhardt, J., dissenting, joined by Pregerson, Kozinski, and Wardlaw, JJ.).  The dissent reasoned that the DNA Act was unconstitutional under the fourth amendment because the fourth amendment “forbids blanket suspicionless searches conducted for ordinary law enforcement purposes.”  
Kincade
, slip op. at 80 (Reinhardt, J., dissenting, joined by Pregerson, Kozinski, and Wardlaw, JJ.).  No special need is presented in this situation; therefore, these suspicionless searches must be unconstitutional.  
Kincade
, slip op. at 74 (Reinhardt, J., dissenting, joined by Pregerson, Kozinski, and Wardlaw, JJ.).  The dissenting judges questioned the plurality’s application of the totality of the circumstances test to uphold searches where no suspicion existed because this proposition puts numerous citizens, including,
 inter alia
, people attending public schools or driving or riding in motor vehicles, at risk of warrantless searches; moreover, the dissent posited whether an individual’s privacy interests could ever outweigh the interests of law enforcement under the totality of the circumstances test.  
Kincade
, slip op. at 85-86 (Reinhardt, J., dissenting, joined by Pregerson, Kozinski, and Wardlaw, JJ.).  
 

In a 1992 case, 
the Fourth Circuit upheld the constitutionality of a Virginia DNA extraction statute which required convicted felons to submit a DNA sample.  
Jones
, 962 F.2d at 308.  Several prison inmates who were the appellants in 
Jones 
argued that DNA’s usefulness is mainly limited to violent crimes because it is unlikely that a suspect’s DNA would be recovered from the scene of a nonviolent crime; the appellants also noted statistics that 
nonviolent offenders have a low rate of committing violent crimes after their initial offense, thus making it remote that the DNA sample of a nonviolent offender would be used to identify him as a suspect in a future violent crime.  
Jones, 
962 F.2d at 308.  The court conceded that the State’s interest in DNA for violent offenders was more compelling than for nonviolent offenders, but pointed out that fingerprints are taken from suspects even though fingerprints may not be found at a crime scene.  
Jones
, 962 F.2d at 308.  
The court stated that DNA serves purposes beyond simply verifying a suspect’s presence at a crime scene, such as identifying a suspect who has tried to conceal his or her identity.  
Jones, 
962 F.2d at 308.  

In line with 
Jones
, the Seventh Circuit more recently upheld the constitutionality of Wisconsin’s DNA extraction statute, which requires all persons convicted of felonies in Wisconsin to provide DNA samples that are analyzed and stored in the State’s databank.  
Green
, 354 F.3d at 676.  The 
Green
 court distinguished its case from 
Edmond
 and 
Ferguson
 by noting the primary purpose in those cases essentially was to search for criminal wrongdoing; in contrast, the purpose of Wisconsin’s DNA law was to obtain reliable proof of a felon’s identity, which was deemed to be a special need beyond the ordinary needs of law enforcement.  
Green
, 354 F.3d at 678.  The court stated that the “Wisconsin law withstands constitutional attack under the firmly entrenched ‘special needs’ doctrine.”  
Green
, 354 F.3d at 679.  

2.  
Illinois Case Law

Illinois courts first discussed the constitutionality of Illinois’ DNA extraction statute in 
Wealer
,  264 Ill. App. 3d at 14, 636 N.E.2d at 1135.  The 
Wealer
 court rejected the special needs approach and applied a balancing test, expressing reluctance to apply the special needs test "in the absence of a clearly articulated administrative justification independent of a law enforcement purpose."  
Wealer
, 264 Ill. App. 3d at 14, 636 N.E.2d at 1135.   
Wealer
’s balancing test requires the court to weigh the government’s interest in conducting the search against the extent of the intrusion of privacy on the defendant to determine whether the search is reasonable.  
Wealer
, 264 Ill. App. 3d at 14, 636 N.E.2d at 1135.  
Wealer
 held that the nonconsensual extraction of DNA samples from convicted sex offenders does not violate traditional fourth amendment principles.  
Wealer
, 264 Ill. App. 3d at 17-18, 636 N.E.2d at 1137.  The court reasoned that the United States Supreme Court has expressed a willingness to relax or eliminate the probable cause requirements of the fourth amendment in certain circumstances where the intrusion is minimal and the government interest is significant.  
Wealer
, 264 Ill. App. 3d at 14, 636 N.E.2d at 1135, citing
 Michigan Department of State Police v. Sitz
, 496 U.S. 444, 452, 110 L. Ed. 2d 412, 421, 110 S. Ct. 2481, 2486 (1990); 
Skinner
, 489 U.S. at 638, 103 L. Ed 2d at 673, 109 S. Ct. at 1424-25 (Marshall, J., dissenting).  The 
Wealer 
court stated that the defendant’s privacy interest was minimal and the intrusion for a DNA sample was slight, but the State’s interest in establishing a sex offender’s identity and in solving future crimes was compelling.  
Wealer
, 264 Ill. App. 3d at 16, 636 N.E.2d at 1136; see also 
People v.
 Calahan
, 272 
Ill. App. 3d
 293, 299-300, 649 
N.E.2d
 588, 591-92 (1995) (adopting 
Jones
’
 
reasoning that government’s interest in accurately identifying criminals outweighs minor intrusion against offenders).  

More recently, 
in 
Garvin
, the Second District Appellate Court upheld the constitutionality of the same version of the statute that defendant challenges in the instant case.  
Garvin
, 349 
Ill. App. 3d
 
at 856, 812 N.E.2d at 776.  The defendant in 
Garvin
 was convicted of burglary and theft and ordered to give a blood sample pursuant to section 5-4-3(a-5) of the Code (730 ILCS 5/5-4-3(a-5) (West 2002)).  
Garvin
, 349 
Ill. App. 3d
 at 849-50, 812 N.E.2d at 776.  Considering the defendant’s challenge to the statute’s constitutionality, the court used the balancing test, finding it “more persuasive” than the special needs approach.  
Garvin
, 349 
Ill. App. 3d
 at 855, 812 N.E.2d at 782.  The court weighed the individual’s expectation of privacy against the State’s interest in search and seizure, holding 
that the defendant’s expectation of privacy was lower because convicted persons, including probationers, lose some rights to personal privacy.  
Garvin
, 349 
Ill. App. 3d
 at 855, 
812 N.E.2d at 782-83, citing 
Griffin
, 483 U.S. at 880, 97 L. Ed. 2d at 722, 107 S. Ct. at 3172.  The 
Garvin
 court further reasoned that the drawing of blood is a minimal intrusion  without health or safety risks.  
Garvin
, 349 
Ill. App. 3d
 at 856, 812 N.E.2d at 783, citing 
Wealer
, 264 Ill. App. 3d at 16, 636 N.E.2d at 1129.  Because of the defendant’s reduced privacy rights and the minimal intrusion of the blood test, 
Garvin
 held that the State’s interest in deterring and prosecuting recidivist acts outweighed the defendant’s privacy right.  
Garvin
, 349 
Ill. App. 3d
 
at 856, 812 N.E.2d at 783.  

The First District Appellate Court also recently upheld the constitutionality of the DNA statute as applied to a defendant convicted of aggravated robbery.  
People v. Hall
, No. 1-03-1276 (September 3, 2004).  The 
Hall 
court applied the balancing test to uphold the statute’s constitutionality and asserted that the defendant’s claim also would fail under the special needs test.  
Hall
, slip op. at 16.  The court balanced the defendant’s loss of privacy with the government’s interest and reasoned that DNA is closely related to the government’s strong interest in deterring and prosecuting recidivist behavior; the court also noted that a convicted felon’s identity is a matter of state interest and that the intrusion was minimal.  
Hall
, slip op. at 14-15.  The court further stated that establishing and maintaining a DNA database is a need distinct from the regular needs of law enforcement; therefore, the Illinois statute fulfills a special need as well.  
Hall
, slip op. at 17.  

III.  ANALYSIS

Defendant and the State agree that a laboratory analysis of a blood test constitutes a search within the meaning of the fourth amendment.  Although two tests have emerged for determining the constitutionality of DNA extraction from defendants, Illinois courts have favored the balancing approach over the special needs test.  
Hall
, slip op. at 12; 
Garvin
, 349 
Ill. App. 3d
 at 855, 812 N.E.2d at 782; 
Wealer
, 264 Ill. App. 3d at 14, 636 N.E.2d at 1135.  Applying the balancing test here, we conclude that the State’s interest in a DNA database outweighs defendant’s interests in privacy and that the Illinois DNA extraction statute does not violate defendant’s fourth amendment rights.  

1.  
Balancing Test

Both defendant and the State analogize the present case to 
Wealer
’s
 
balancing test.  The State asserts that one of the statute’s purposes is to allow comparison of DNA samples in the database to those taken from crime scenes so law enforcement officers can solve past crimes and apprehend future offenders. A DNA database can also help to obtain proof of identity or exonerate a defendant.  DNA testing provides a highly conclusive method of identification, even for felons who try to disguise their identity through other means.  See 
Garvin
, 349 
Ill. App. 3d
 
 at 855, 812 N.E.2d at 782, citing 
Miller v. United States Parole
 
Comm’n
, 259 F. Supp. 2d 1166, 1177-78 (D. Kan. 2003).  
Miller
 stated that DNA is similar to a fingerprint because both are identity markers; however, DNA testing can more accurately identify a person’s identity and has only a slight margin of error.  
Miller
, 259 F. Supp. 2d at 1178.  Applying that test, we find that the State has a strong interest in obtaining reliable DNA identification evidence and in properly identifying convicted felons.
(footnote: 2)
Despite the State’s strong interest in identifying felons, defendant’s interests must be weighed as well.  In this case, defendant, as a convicted felon, has an expectation of privacy that is lower than the personal privacy rights otherwise protected under the fourth amendment.  
Garvin
, 349 
Ill. App. 3d
 
at 855, 812 N.E.2d at 782, citing 
Griffin
, 483 U.S. at 880, 97 L. Ed. 2d at 722, 107 S. Ct. at 3172; 
Jones
, 962 F.2d at 307.  Defendant contends that although prisoners have a reduced right to privacy, they do not forfeit all of their privacy rights.  Defendant also argues that the storage of his DNA sample guarantees that he will be subjected to future warrantless searches even after he has served his sentence for the instant offenses.  However, once a person is convicted of a felony, the person’s identity becomes a matter of state interest such that the person loses any legitimate expectation of privacy in the identifying information taken from him.  
Garvin
, 349 
Ill. App. 3d
 at 855, 812 N.E.2d at 782.  

Defendant’s privacy rights can be distinguished from those highlighted in 
Edmond
 and 
Ferguson
, where searches violated the fourth amendment.  
Ferguson
, 532 U.S. at 85, 149 L. Ed. 2d at 221, 121 S. Ct. at 1292; 
Edmond
, 531 U.S. at 48, 148 L. Ed. 2d at 347-48, 121 S. Ct. at 458 (involving pregnant hospital patients and random searches of cars with drug-sniffing dogs, respectively).  Defendant was neither arbitrarily stopped, as in 
Edmond, 
nor targeted in the course of seeking ordinary medical attention, as in 
Ferguson
.  In contrast to those cases, defendant is a convicted felon, not a randomly targeted member of society.  

Furthermore, despite defendant’s contention that blood extraction is fundamentally different and more intrusive than fingerprinting, several courts have found the physical intrusion of drawing blood to be minimal.  
Hall
, slip op. at 15; 
Garvin
, 349 
Ill. App. 3d
 at 856, 812 N.E.2d at 783; 
Wealer
, 264 Ill. App. 3d at 16, 636 N.E.2d at 1136;
 People v. Adams
, 149 Ill. 2d 331, 346, 597 N.E.2d 574, 582 (1992) (holding that physical intrusion for AIDS test is relatively slight and poses no health risks)
.  Blood extraction presents no threat to the health or safety of the individual being tested.  
Wealer
, 264 Ill. App. 3d at 16, 636 N.E.2d at 1136.  In fact, the Illinois statute requires that the extraction be done by medical personnel.  730 ILCS 5/5-4-3(d) (West 2002).  

Moreover, while blood tests might constitute a greater intrusion to a defendant than fingerprinting, blood tests are commonplace.
  Green
 notes that prisons have a constitutional duty to attend to an inmate’s medical needs, which likely entail the drawing of blood, and the blood extracted for medical purposes can be put to multiple uses, thus lessening the intrusion on the inmate.  
Green
, 354 F.3d at 679-80 (Easterbrook, J., concurring).  The prisoner would not have to submit to an additional blood test solely for DNA collection because DNA is present in all living cells and may be obtained from any of the samples regularly collected from a prisoner.  
Green, 
354 F.3d at 679 (Easterbrook, J., concurring).  Further, the fourth amendment does not control “how properly collected information is deployed.”  
Green, 
354 F.3d at 680 (Easterbrook, J., concurring).  

Defendant asserts that because the Illinois statute applies to felons, as opposed to the more narrowly defined group of convicted sex offenders targeted in 
Wealer
, it is more likely that the statute will be applied in an arbitrary manner
.  We disagree.  Because the current statute expands the group subject to DNA extraction from persons convicted of certain sex offenses to all convicted felons, a narrow class of individuals remains.  The wording of section 5-4-3(f) of the current version of the statute (730 ILCS 5/5-4-3(f) (West 2002)) resembles the wording found acceptable in 
Wealer
, which noted that the statute called for 
“nonconsensual sampling for the purpose of maintaining a data bank.” 
Wealer
, 264 Ill. App. 3d at 15, 636 N.E.2d at 1135-36. The 
Wealer
 court also observed the confidential nature of the information and noted that it was made available only to law enforcement officials.  
Wealer
, 264 Ill. App. 3d at 15, 636 N.E.2d at 1135-36, discussing 730 ILCS 5/5-4-3(f) (West 1992).     

Applying the balancing test, we conclude that the State’s interest in conclusively identifying felons and solving past and future crimes outweighs the slight intrusion on the defendant’s diminished privacy rights.  Section 5-4-3 of the Code is constitutional under this test.

2.  
Special Needs Test

Defendant argues that the only exception to the fourth amendment requirement of individualized suspicion that might justify compelled DNA extraction is the special needs exception.  The special needs test requires that a search conducted without a warrant or reasonable suspicion must include some interest “beyond the normal need for law enforcement” to be valid.  
Hall
, slip op. at 16, quoting 
State v. Steele
, 155 Ohio App. 3d 659, 668, 802 N.E.2d 1127, 1134 (2003); 
Edmond
, 531 U.S. at 37, 148 L. Ed. 2d at 340, 121 S. Ct. at 451-52.  In the special needs analysis, the court first must determine whether the statute meets a special need and whether the purpose goes beyond that of ordinary law enforcement.  
Hall
, slip op. at 16; 
Steele
, 155 Ohio App. 3d at 670-71, 802 N.E.2d at 1136.  As we have noted, examples of valid special needs have included drug and alcohol tests for railway and customs employees. 
 Skinner, 
489 U.S. at 620, 103 L. Ed. 2d at 661-62, 
109 S. Ct. at 1415
; 
Von Raab
, 489 U.S. at 666, 103 L. Ed. 2d at 702, 109 S. Ct. at 1391.  If a special need is met, then the court evaluates the reasonableness of the intrusion.  
Hall
, slip op. at 17; 
Steele
, 155 Ohio App. 3d at 672, 802 N.E.2d at 1137.  The individual’s privacy interests are balanced against the government’s special need.  
Hall
, slip op. at 17; 
Steele
, 155 Ohio App. 3d at 672, 802 N.E.2d at 1137.  

Courts applying the special needs analysis in DNA cases have concluded that the primary purpose of DNA extraction statutes is to create and maintain a DNA database separate from the ordinary means of law enforcement.  
Hall
, slip op. at 16-17, citing 
Steele
, 155 Ohio App. 3d at 671, 802 N.E.2d at 1136.  The Tenth Circuit also has held that building a DNA database goes beyond the ordinary needs of law enforcement.  
United States v. Kimler
, 335 F.3d 1132, 1146 (10th Cir. 2003).  

Defendant urges this court not to follow 
Garvin 
or 
Kincade
 because he contends both decisions erred in applying the balancing test.  Defendant argues that 
Garvin
 erred by not considering the differences between violent and sexual offenders versus nonviolent and nonsexual offenders.  Defendant also 
points out that 
Kincade 
involved a defendant who was on supervised release.  Defendant argues that he is neither a parolee nor a probationer, and although a DNA statute may deter recidivism of those individuals, those special needs do not apply to him.  He contends that the statute’s only use is grounded purely in law enforcement means.  

Defendant argues that even if the DNA statute serves a special need when applied to sex offenders, that does not pertain to nonsexual offenders such as himself.  He further contends that as a nonsexual offender, he is less likely to leave DNA behind at the scene of a crime, and therefore, the chance that his DNA will be used to solve a future crime is remote.  However, even if defendant is unlikely to leave his DNA at a crime scene, the DNA can be used to properly identify him if he disguises his appearance.  Both 
Garvin
 and 
Hall 
upheld the constitutionality of a DNA statute applied to defendants who were not sex offenders, reasoning that the State has an interest in preventing recidivism, accurately determining guilt or innocence and conclusively identifying felons.  
Hall
, slip op. at 15; 
Garvin
, 349 
Ill. App. 3d
 at 856, 812 N.E.2d at 783.  

The State has an interest in maintaining a database of the DNA of sex offenders as well as the DNA of all convicted felons.  The statute’s primary purpose is to create and maintain a database that can be used to identify felons and compare samples taken from crime scenes to convict or exonerate individuals.  DNA alone does not confirm the commission of a crime; rather, it confirms an individual’s identity.  Illinois’ DNA database statute serves a special need beyond the ordinary needs of law enforcement. 

Having met the special needs requirement, defendant’s privacy interest is then balanced against the State’s special need.  
Hall
, slip op. at 16.   Since we have already applied the balancing test and found that the State’s interests prevail over defendant’s, we need not apply the balancing test again as part of the special needs analysis.  See 
Hall
, slip op. at 18.  Therefore, even under the special needs test, defendant’s claim still fails. 

IV.  CONCLUSION

Given the following considerations, we uphold the constitutionality of section 5-4-3(a-5).  The State has an interest in identifying convicted felons, the privacy expectations of such individuals are substantially lower than those of the general public, and the intrusion for a DNA sample is minimal.  Applying the balancing test, the State’s interests in conclusively identifying felons and maintaining a DNA database outweigh defendant’s privacy interests.  Moreover, the  statute is also constitutional under the special needs test because it fulfills a special need outside of the ordinary needs of law enforcement and the State’s interests outweigh the defendant’s privacy interests.  

Accordingly, for all of the aforementioned reasons, the judgment of the trial court is affirmed. 

Affirmed.   

CAMPBELL, P.J., and O'BRIEN, J., concur.

FOOTNOTES
1: Although the trial court described a more recent and broader incarnation of the statute, the version of the statute under which defendant was convicted (730 ILCS 5/5-4-3(a-5) (West 2002)) only allowed DNA samples to be taken via blood.   

2:  Although we firmly endorse the State’s interest in the instant case, the dissent in 
Kincade
 raises a valid point by noting that under the plurality view in that decision, “all Americans will be at risk, sooner rather than later, of having our DNA samples permanently placed on file in federal cyberspace, and perhaps even worse, of being subjected to various other governmental programs providing for suspicionless searches conducted for law enforcement purposes.”  
Kincade
, slip op. at 50.  It is troubling to ponder the serious constitutional and privacy questions that no doubt will emerge in this line of cases.