THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VICTOR CHAMBERLAIN, Defendant-Appellant.

Third District    No. 3—03—1005

Opinion filed January 21, 2005.

Kerry J. Bryson, of State Appellate Defender's Office, of Ottawa, for appellant.

Terence M. Patton, State's Attorney, of Cambridge (Lawrence M. Bauer and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The defendant, Victor Chamberlain, pled guilty to two counts of aggravated battery. 720 ILCS 5/12—4(b)(6) (West 2002). The trial court sentenced him to two concurrent four-year terms of imprisonment, with 29 days of credit for time spent in presentence custody. The defendant was also ordered to submit to genetic marker testing pursuant to section 5—4—3 of the Unified Code of Corrections (Code) (730 ILCS 5/5—4—3 (West 2002)). The defendant subsequently filed a motion to withdraw his guilty plea, which was denied by the trial court.

The defendant appeals, contending that (1) the trial court erred in failing to conduct a fitness hearing, (2) the defendant is entitled to additional presentence custody credit and (3) section 5—4—3 of the Code is unconstitutional. We grant the defendant additional presentence custody credit, but otherwise affirm.

BACKGROUND

On July 10, 2003, the defendant was charged with six counts of aggravated battery (720 ILCS 5/12—4 (West 2002)) and two counts of attempted aggravated battery (720 ILCS 5/8—4, 12—4 (West 2002)). Those charges arose out of incidents occurring on February 25, 2003, and May 9, 2003, while the defendant was in custody at the Department of Corrections' Illinois Youth Center—Kewanee.

Defendant entered a negotiated plea of guilty to two counts of aggravated battery on August 22, 2003. In response to questioning by the court, the defendant indicated that he was 19 years old, was able to read and write, and was not addicted to drugs or alcohol. However, the defendant also stated he was taking "a lot" of psychotropic medication for bipolar disorder, mood swings, and an anxiety disorder. A "Health Statute Summary Report" filed on the date of the plea indicated that the defendant was bipolar, for which he was taking several types of medication. The defendant indicated that these medications made him feel "a little" better.

At one point during the hearing, the trial court asked the defendant if he knew what charges he was pleading guilty to and whether he had received enough time to speak with his attorney about his plea. The defendant gave equivocal answers to both questions. The

trial court continued to question the defendant as to these points, ultimately receiving affirmative answers to both questions. Thereafter, the court admonished the defendant in accordance with Supreme Court Rule 402. 177 Ill. 2d R. 402.

After a factual basis was presented, the trial court found the plea was knowing and voluntary. The court determined that defendant understood his rights, the nature of the charges and the consequences of his guilty plea. The trial court then sentenced defendant to two concurrent four-year terms of imprisonment, with 29 days of credit for time spent in presentence custody. In addition, the defendant was ordered to submit to deoxyribonucleic acid (DNA) testing.

On September 17, 2003, the trial court received a letter from the defendant indicating that he wanted to withdraw his plea because he was suffering from mental illness on the date of the plea. The defendant subsequently filed a *pro se* motion to withdraw his guilty plea containing similar contentions. Soon thereafter, defense counsel filed an amended motion to withdraw the defendant's guilty plea.

A hearing on the motion was held on December 15, 2003. At the hearing, defense counsel argued that the defendant's plea was not voluntary, largely because of the effects of the psychotropic medication he was taking at the time. The defendant testified similarly, indicating that he did not understand the plea proceedings because of his medication and his lack of education.

At the conclusion of the hearing, the trial court denied the defendant's motion. The court found that it had determined that defendant was fit at the time he entered his plea and was sentenced. Furthermore, the trial court indicated that nothing in the current proceedings had changed its opinion on that issue.

## DISCUSSION

### A. Fitness Hearing

■ On appeal, the defendant first argues that, despite the fact that no relevant motion was made below, the trial court should have *sua sponte* ordered a fitness hearing to determine if he was fit to plead guilty. The defendant argues that his demeanor at the plea hearing and his use of psychotropic medication mandated that result.

Generally, a defendant must object to an error at trial and include the issue in a posttrial motion to preserve it for review on appeal. *People v. Basler*, 193 Ill. 2d 545, 740 N.E.2d 1 (2000). Because no objection was made at the plea hearing in this case, this issue has been waived. However, plain errors affecting substantial rights may be reviewed by an appellate court despite the defendant's failure to raise the errors in the trial court. 134 Ill. 2d R. 615(a). The plain error

doctrine allows a reviewing court to consider defects affecting substantial rights if the evidence is closely balanced or if required by fundamental fairness. *People v. Donoho*, 204 Ill. 2d 159, 788 N.E.2d 707 (2003). Because of its implications for the fundamental fairness of the plea hearing, we choose to consider the defendant's fitness argument in this case.

Due process bars the prosecution of a defendant who is not fit to stand trial. *People v. Sandham*, 174 Ill. 2d 379, 673 N.E.2d 1032 (1996). The trial court has a duty to hold a fitness hearing when a *bona fide* doubt has been raised with regard to a defendant's fitness. *People v. Griffin*, 178 Ill. 2d 65, 687 N.E.2d 820 (1997). The question of whether a *bona fide* doubt exists is generally a matter within the discretion of the trial court. *Sandham*, 174 Ill. 2d 379, 673 N.E.2d 1032.

"A defendant is presumed to be fit to stand trial or to plead, and be sentenced. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104—10 (West 2002). However, a "defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21(a) (West 2002).

Additionally, in *People v. Mitchell*, 189 Ill. 2d 312, 727 N.E.2d 254 (2000), the court held that the taking of psychotropic medication alone does not create a *bona fide* doubt as to a defendant's fitness to stand trial. Therefore, a trial court is not required to conduct a fitness hearing based solely on the fact that the defendant was taking psychotropic medication at the time of trial. *Mitchell*, 189 Ill. 2d 312, 727 N.E.2d 254. Rather, a court must view the totality of the circumstances in determining whether a *bona fide* doubt as to a defendant's fitness exists. *People v. Easley*, 192 Ill. 2d 307, 736 N.E.2d 975 (2000). Relevant factors for the court to consider include a defendant's irrational behavior, his demeanor at trial and any prior medical opinion as to the defendant's fitness. *Easley*, 192 Ill. 2d 307, 736 N.E.2d 975.

In this case, a *bona fide* doubt was not raised as to defendant's fitness. Despite the defendant's initially equivocal answers to the court's questioning, the court persisted and received proper responses to all of its questions. The defendant fully participated in the hearings, and his responses showed he understood the court's questioning. Moreover, the trial court was aware of the medication the defendant was taking and specifically questioned him regarding that medication. Ultimately, the trial court stated:

"I *** find for the record that Mr. Chamberlain has answered questions appropriately today, and despite the fact that he's on psy-

chotropic medication, the Court does not find that the medicine affects his ability to act and think clearly in court, and I have no question as to his fitness to stand trial or to enter a plea." We find that the trial court appropriately considered the defendant's demeanor in court and his use of psychotropic medication, determining that there was no *bona fide* doubt as to his fitness. Following our supreme court's decisions in *Mitchell* and *Easley*, we conclude that the trial court was not required to conduct a fitness hearing based on these circumstances.

## B. Credit

■ Next, the defendant argues that he is entitled to additional presentence custody credit. He contends that he is entitled to 15 days of credit for the time between when he was charged and when he was transferred from the youth center to the Henry County jail. The State contends that (1) the defendant has waived this issue, and (2) because he was then serving a sentence on an unrelated offense, he is not entitled to credit for any time he spent at the youth center.

The State argues that this issue is waived because the defendant entered a voluntary plea of guilty. However, this court has repeatedly held that errors regarding sentencing credit will not be deemed waived on appeal. See *People v. Davis*, 291 Ill. App. 3d 552, 683 N.E.2d 1260 (1997). Therefore, we will address this issue.

Section 5—8—7(b) of the Unified Code of Corrections provides that an offender "shall be given credit *** for time spent in custody as a result of the offense for which the sentence was imposed." 730 ILCS 5/5—8—7(b) (West 1998). In *People v. Robinson*, 172 Ill. 2d 452, 667 N.E.2d 1305 (1996), our supreme court determined that this provision entitles a defendant to sentencing credit for both offenses when he is simultaneously in presentence custody on two unrelated charges. The court explained that a defendant is considered in simultaneous custody when he is incarcerated on one charge and his bond in the other is withdrawn or revoked. *Robinson*, 172 Ill. 2d at 458-59, 667 N.E.2d at 1308, citing *People v. Arnhold*, 115 Ill. 2d 379, 504 N.E.2d 100 (1987).

More recently, the court in *People v. Spencer*, 347 Ill. App. 3d 483, 807 N.E.2d 1228 (2004), extended the rule of *Robinson*. In *Spencer*, the defendant was in custody serving a sentence on an unrelated crime at the same time as he was in presentence custody on another charge. The reviewing court found that just as the defendant in *Robinson* was simultaneously in presentence custody on two unrelated charges, so too was the defendant in that case simultaneously serving a sentence and in presentence custody. *Spencer*, 347 Ill. App. 3d 483, 807 N.E.2d 1228. As the court noted, "were the defendant in this case not serving

his sentence for possession ***, he still would have remained in custody as a result of his failure to post a bond in the [other] case." *Spencer*, 347 Ill. App. 3d at 490, 807 N.E.2d at 1234. The court then awarded the defendant the requested credit. *Spencer*, 347 Ill. App. 3d 483, 807 N.E.2d 1228.

We agree with the reasoning in *Spencer*. Once the defendant in this case was charged with the present offenses, he was simultaneously serving his prior sentence and he was also in presentence custody. Thus, he is entitled to credit for the entire period from the time he was charged until he was sentenced. Accordingly, we modify the mittimus to reflect an additional 15 days of presentence credit.

## C. Genetic Marker Testing

■ Finally, the defendant contends that section 5—4—3 of the Code violates his federal and state constitutional rights to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6.

In relevant part, section 5—4—3 of the Code requires genetic sampling from all persons "convicted or found guilty of any offense classified as a felony under Illinois law." 730 ILCS 5/5—4—3(a) (West 2002). Such persons "shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section." 730 ILCS 5/5—4—3(a) (West 2002). The purpose of this section is to establish a database containing the genetic identity of recidivist criminal offenders. See *People v. Garvin*, 349 Ill. App. 3d 845, 812 N.E.2d 773 (2004); 730 ILCS 5/5—4—3 (West 2002). The United States Supreme Court has held that the analysis of a biological sample is a search under the fourth amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989).

Initially, we note that the issue of mandatory DNA testing has been the subject of a great deal of recent legislative activity and resultant litigation. All 50 states and the District of Columbia have enacted genetic marker testing statutes, with all reported constitutional challenges to those statutes proving unsuccessful. See *Garvin*, 349 Ill. App. 3d 845, 812 N.E.2d 773 (containing an extensive list of such statutes and relevant case law). Furthermore, as noted in the *Garvin* decision:

"In considering the issue of genetic marker testing, *** courts have taken two approaches in their fourth amendment analyses, those being a balancing test [citation] and a special needs test [citation]. The balancing test refers to balancing the governmental need for the action against the privacy concern of the individual af-

fected. [Citation.] The special needs test is similar, although it allows the governmental interest to supersede the individual's privacy concern if the action serves a governmental need 'beyond normal law enforcement.' [Citation.] A majority of courts have applied the balancing approach. A minority of courts have determined that genetic marker testing falls within the special needs doctrine." *Garvin*, 349 Ill. App. 3d at 855, 812 N.E.2d at 782.

In Illinois, courts have universally favored the balancing test over the special needs test. *People v. Edwards*, 353 Ill. App. 3d 475 (2004); *People v. Ramos*, 353 Ill. App. 3d 133 (2004); *People v. Hall*, 352 Ill. App. 3d 537, 816 N.E.2d 703 (2004); *Garvin*, 349 Ill. App. 3d 845, 812 N.E.2d 773; *People v. Wealer*, 264 Ill. App. 3d 6, 636 N.E.2d 1129 (1994). Some Illinois courts have specifically rejected the special needs test (*Ramos*, 353 Ill. App. 3d 133; *Garvin*, 349 Ill. App. 3d 845, 812 N.E.2d 773; *Wealer*, 264 Ill. App. 3d 6, 636 N.E.2d 1129). Others have accepted the balancing test, but have then gone on to find section 5—4—3 constitutional under a special needs analysis. *Edwards*, 353 Ill. App. 3d 475; *Hall*, 352 Ill. App. 3d 537, 816 N.E.2d 703. We can perceive no reason to deviate from the well-reasoned opinions of our sister districts in *Ramos, Garvin*, and *Wealer*. Thus, we will also apply the balancing test to this issue.

The State has a strong interest in deterring and prosecuting recidivist criminal acts, and obtaining reliable DNA identification evidence offers a precise method of identifying and eliminating potential suspects. *Wealer*, 264 Ill. App. 3d 6, 636 N.E.2d 1129; *Garvin*, 349 Ill. App. 3d 845, 812 N.E.2d 773. Furthermore, as a convicted felon, the defendant has a diminished expectation of privacy. *Griffin v. Wisconsin*, 483 U.S. 868, 97 L. Ed. 2d 709, 107 S. Ct. 3164 (1987); *Edwards*, 353 Ill. App. 3d 475. Finally, the physical intrusion imposed by section 5—4—3 amounts to a relatively insubstantial test that poses no threat to the health or safety of the individual tested. *Ramos*, 353 Ill. App. 3d 133; *Wealer*, 264 Ill. App. 3d 6, 636 N.E.2d 1129.

Thus, because the State's interest outweighs both a convicted felon's diminished privacy rights and the minimal intrusion caused by the submission of a DNA sample, we find that section 5—4—3 is constitutional.

## CONCLUSION

For the foregoing reasons, we modify the mittimus to grant the defendant an additional 15 days of presentence jail credit. In all other respects, we affirm the judgment of the circuit court of Henry County.

Affirmed as modified.

HOLDRIDGE and O'BRIEN, JJ., concur.