831 N.E.2d 1192 (2005)
358 Ill. App.3d 1085
294 Ill.Dec. 867
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Eugene HUNTER, Defendant-Appellant.
No. 4-03-0957.
Appellate Court of Illinois, Fourth District.
June 30, 2005.
*1193 Daniel D. Yuhas and Martin J. Ryan, both of State Appellate Defender's Office, of Springfield, for appellant.
Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Justice MYERSCOUGH delivered the opinion of the court:
In September 2003, following a bench trial, the trial court found defendant, Eugene Hunter, guilty of possession of a substance containing cocaine (720 ILCS 570/402(c) (West 2002)). In November 2003, the court sentenced defendant to 24 months of probation with various terms and conditions. One condition was that defendant submit to genetic testing pursuant to section 5-4-3(a)(3.5) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4-3(a)(3.5) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2776 (West)))), at his own expense, and pay a $200 analysis fee. Defendant appeals, arguing (1) the compulsory extraction and perpetual storing of defendant's deoxyribonucleic acid (DNA) violates his right to be free from unreasonable searches and seizures under the United States and Illinois Constitutions and (2) the court lacked the authority to order defendant to pay the cost of the *1194 DNA collection in addition to the $200 analysis fee and such order must be vacated. We affirm in part, reverse in part, and remand with directions.

I. ANALYSIS

A. Constitutionality of Section 5-4-3(a)(3.5) of the Unified Code
Defendant argues that the ordered extraction and analysis of his DNA pursuant to section 5-4-3 of the Unified Code (730 ILCS 5/5-4-3 (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2775 (West)))), violates his right to be free from unreasonable searches and seizures under the fourth amendment of the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6). Because the fourth amendment of the United States Constitution provides the same level of protection as the search and seizure provision in article I, section 6, of the Illinois Constitution, we limit our analysis to the United States Constitution. See, e.g., People v. Wealer, 264 Ill.App.3d 6, 18, 201 Ill.Dec. 697, 636 N.E.2d 1129, 1137 (1994). In addition, while defendant challenges the statute as a whole, he was ordered to submit to DNA testing pursuant to section 5-4-3(a)(3.5) of the Unified Code (730 ILCS 5/5-4-3(a)(3.5) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2776 (West)))). Therefore, we limit our holding to that section. See, e.g., People v. Ramos, 353 Ill.App.3d 133, 145 n. 2, 288 Ill.Dec. 460, 817 N.E.2d 1110, 1122 n. 2 (2004).
Although defendant did not challenge the constitutionality of section 5-4-3(a)(3.5) of the Unified Code (730 ILCS 5/5-4-3(a)(3.5) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2776 (West)))) in the trial court, a constitutional challenge to a criminal statute may be raised at any time. Ramos, 353 Ill.App.3d at 142, 288 Ill.Dec. 460, 817 N.E.2d at 1119. Whether section 5-4-3(a)(3.5) is constitutional is a question of law subject to de novo review. Ramos, 353 Ill.App.3d at 142, 288 Ill.Dec. 460, 817 N.E.2d at 1119.
As originally enacted, section 5-4-3 of the Unified Code required that persons convicted of certain sexual offenses submit blood and saliva samples to the Illinois Department of State Police for analysis and categorization. Ill.Rev.Stat.1991, ch. 38, par. 1005-4-3. A challenge to the constitutionality of this statute on the ground that it violated the fourth amendment of the United States Constitution (U.S. Const., amend.IV) failed in Wealer, 264 Ill.App.3d at 17-18, 201 Ill.Dec. 697, 636 N.E.2d at 1137 (holding that suspicionless DNA sampling of convicted sex offenders did not violate the fourth amendment).
In August 2002, the legislature amended section 5-4-3(a) of the Unified Code to mandate DNA samples from all persons "convicted or found guilty of any offense classified as a felony under Illinois law" regardless of the sentence imposed. 730 ILCS 5/5-4-3(a) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2775 (West))). Challenges to this version of the statute on constitutional grounds have failed. See, e.g., People v. Butler, 354 Ill.App.3d 57, 68, 289 Ill.Dec. 333, 819 N.E.2d 1133, 1142 (2004) (First District); People v. Garvin, 349 Ill.App.3d 845, 856, 285 Ill.Dec. 953, 812 N.E.2d 773, 783 (2004) (Second District), appeal allowed, 212 Ill.2d 541, 291 Ill.Dec. 711, 824 N.E.2d 287 *1195 (2004); People v. Chamberlain, 354 Ill. App.3d 1070, 1076, 291 Ill.Dec. 39, 822 N.E.2d 914, 920 (2005) (Third District). In fact, all 50 states and the District of Columbia have enacted genetic-marker-testing statutes. Garvin, 349 Ill.App.3d at 853-54, 285 Ill.Dec. 953, 812 N.E.2d at 781 (citing statutes). All reported constitutional challenges to those statutes have been rejected. Garvin, 349 Ill.App.3d at 854, 285 Ill.Dec. 953, 812 N.E.2d at 781-82 (citing cases).
The parties agree that the extraction and testing of blood and/or saliva samples implicate the fourth amendment. The fourth amendment of the United States Constitution (U.S. Const., amend.IV) guarantees:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
While defendant primarily focuses on the extraction of blood, we will assume that if the extraction of blood withstands the constitutional challenge, the taking of a saliva sample would also be upheld. See, e.g., Wealer, 264 Ill.App.3d at 9-10, 201 Ill.Dec. 697, 636 N.E.2d at 1132.
Illinois courts have generally taken two approaches when analyzing the constitutionality of section 5-4-3 of the Unified Code under the fourth amendment. The majority of Illinois courts have favored the balancing or "totality of the circumstances" test. Chamberlain, 354 Ill. App.3d at 1076, 291 Ill.Dec. 39, 822 N.E.2d at 919 (citing cases). Specifically, the courts recognize a "perceived willingness of the United States Supreme Court, under certain circumstances, to relax or eliminate any requirement of probable cause or individualized suspicion [under the fourth amendment] where the nature of the intrusion occasioned by a particular search or seizure is minimal and the government's interest significant." Wealer, 264 Ill. App.3d at 14, 201 Ill.Dec. 697, 636 N.E.2d at 1134-35.
Some Illinois courts, while accepting the balancing test, have also found section 5-4-3 constitutional under a "special[-]needs" analysis. Chamberlain, 354 Ill.App.3d at 1076, 291 Ill.Dec. 39, 822 N.E.2d at 919 (citing cases). Under the special-needs test, no warrant or individualized suspicion is necessary where the intrusion serves a special governmental need beyond the normal need for law enforcement. People v. Edwards, 353 Ill.App.3d 475, 485, 288 Ill.Dec. 879, 818 N.E.2d 814, 822 (2004), pet. for leave to appeal pending, No. 99515. Once such need is identified, courts then determine whether the intrusion is reasonable by balancing the individual's privacy interest against the government's special need. Edwards, 353 Ill.App.3d at 485, 288 Ill.Dec. 879, 818 N.E.2d at 823. Other courts have completely rejected the special-needs test. Chamberlain, 354 Ill. App.3d at 1076, 291 Ill.Dec. 39, 822 N.E.2d at 919 (citing cases).
Defendant argues that the Illinois courts have improperly applied a balancing test rather than the special-needs test when analyzing the constitutionality of section 5-4-3(a)(3.5) of the Unified Code. Relying on City of Indianapolis v. Edmond, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), and Ferguson v. City of Charleston, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), defendant asserts that the only exception *1196 to the fourth amendment's warrant or individualized suspicion requirement that might apply to genetic-marker statutes is the special-needs exception. Defendant argues, however, that the statute does not meet the special-needs test because the statute is designed to serve the government's general interest in crime control and not any special need.
In Edmond, the United States Supreme Court found unconstitutional a vehicle-checkpoint program whose primary purpose was to "interdict[] illegal narcotics" (Edmond, 531 U.S. at 40, 121 S.Ct. at 453, 148 L.Ed.2d at 343) and to "detect evidence of ordinary criminal wrongdoing" (Edmond, 531 U.S. at 41, 121 S.Ct. at 454, 148 L.Ed.2d at 343). Under the program, police stopped a predetermined number of vehicles at a checkpoint. Edmond, 531 U.S. at 35, 121 S.Ct. at 450, 148 L.Ed.2d at 339. Drivers were asked to produce a license and registration. The police officer would check each driver for signs of impairment, and a narcotics-detection dog walked around each vehicle. Edmond, 531 U.S. at 35, 121 S.Ct. at 450-51, 148 L.Ed.2d at 339. The Court found that because the purpose of the program was not distinguishable from the general interest in crime control, the program violated the fourth amendment. Edmond, 531 U.S. at 48, 121 S.Ct. at 458, 148 L.Ed.2d at 347-48.
In Ferguson, a state hospital implemented a program that allowed the staff, without informed patient consent, to perform drug scans on the urine of pregnant women. Ferguson, 532 U.S. at 71-72, 121 S.Ct. at 1285, 149 L.Ed.2d at 212-13. The hospital reported positive results to the police. Ferguson, 532 U.S. at 72, 121 S.Ct. at 1285, 149 L.Ed.2d at 213. The Court found that "the immediate objective of the searches was to generate evidence for law enforcement purposes." (Emphasis in original.) Ferguson, 532 U.S. at 83, 121 S.Ct. at 1291, 149 L.Ed.2d at 219. The United States Supreme Court applied the special-needs test and determined that, because the primary purpose of the program at issue could not be distinguished from the general interest in crime control, the program could not be sustained under the fourth amendment. Ferguson, 532 U.S. at 84, 121 S.Ct. at 1292, 149 L.Ed.2d at 220.
The use of the special-needs tests in Edmond and Ferguson does not justify its use in the instant case. As noted in Ramos, 353 Ill.App.3d at 148, 288 Ill.Dec. 460, 817 N.E.2d at 1124, neither Edmond nor Ferguson holds that the special-needs test should be used "to the express exclusion of the balancing test." See also United States v. Kincade, 379 F.3d 813 (9th Cir. 2004) (analyzing supreme court precedent and concluding that use of the traditional balancing test to uphold genetic-marker testing proper); United States v. Knights, 534 U.S. 112, 120 n. 6, 122 S.Ct. 587, 592 n. 6, 151 L.Ed.2d 497, 505 n. 6 (2001) (failing to decide whether a suspicionless search of a probationer's residence would be reasonable under the fourth amendment where the facts of the case indicated that the search was supported by reasonable suspicion).
Further, the facts of defendant's case are distinguishable. In both Edmond and Ferguson, the program or policy at issue affected members of the general public. Here, defendant is a convicted felon sentenced to probation. Probationers are individuals with a diminished expectation of privacy. People v. Lampitok, 207 Ill.2d 231, 250-51, 278 Ill.Dec. 244, 798 N.E.2d 91, 104 (2003). This diminished expectation of privacy is "sufficient to justify a *1197 warrantless search outside the framework of the `special needs' analysis." Butler, 354 Ill.App.3d at 66, 289 Ill.Dec. 333, 819 N.E.2d at 1140 (applying the balancing test to a challenge to section 5-4-3(a)(3.5)).
Consequently, we agree with those courts that have applied the balancing test when reviewing the constitutionality of section 5-4-3(a)(3.5) under the fourth amendment. Applying the balancing test requires a balancing of the State's need for or interest in the search "against the individual's expectation of privacy and the intrusive nature of the search." Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d at 782.
Defendant argues that even under the balancing test, section 5-4-3(a)(3.5) still violates defendant's fourth amendment rights because the State lacks a compelling interest, he has a substantial privacy interest in bodily integrity and genetic information, and extraction of his DNA is intrusive. We disagree.
Defendant asserts that the State lacks a compelling interest regarding nonviolent nonsexual offenders because such offenders are unlikely to leave DNA evidence at the scene of their crime. Defendant claims that in cases such as his, which involve possession of a controlled substance, the State's interest is not sufficiently advanced and the statute "sweeps too broadly" and is not "narrowly tailored."
The State has a strong interest in "deterring and prosecuting recidivist criminal acts." Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d at 782. The State also has an interest in establishing the identity of felons, especially where the traditional means may be inadequate and inconclusive. People v. Hall, 352 Ill.App.3d 537, 547, 287 Ill.Dec. 736, 816 N.E.2d 703, 712 (2004). Section 5-4-3(a)(3.5) of the Unified Code is closely related to these interests because collection and cataloguing of DNA assists the State in identifying repeat offenders who may conceal or alter their identity and can assist the State in solving past and future crimes. Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d at 712. It can also eliminate potential suspects and identify those wrongfully convicted of a crime. Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d at 712. Consequently, the State has a compelling interest in genetic-marker collection of felons.
Defendant also claims that section 5-4-3(a)(3.5) fails the balancing test because he has a substantial privacy interest in his bodily integrity and genetic information. While recognizing that a person's status as a prisoner reduces his expectation of privacy, defendant asserts that a convicted prisoner does not forfeit all constitutional protections by reason of the conviction. Defendant also argues that DNA extraction differs from fingerprinting because fingerprinting records a physical attribute generally exposed to public view.
It is well-established that the privacy interest of convicted felons is diminished. Ramos, 353 Ill.App.3d at 154, 288 Ill.Dec. 460, 817 N.E.2d at 1129; Butler, 354 Ill. App.3d at 67, 289 Ill.Dec. 333, 819 N.E.2d at 1141. Once convicted, an individual's identity becomes a matter of State interest. Hall, 352 Ill.App.3d at 547-48, 287 Ill.Dec. 736, 816 N.E.2d at 712-13. DNA identification is akin to fingerprinting, "another minimal intrusion upon a diminished privacy interest." Ramos, 353 Ill.App.3d at 154, 288 Ill.Dec. 460, 817 N.E.2d at 1129. DNA identification, however, is more conclusive than fingerprinting. Garvin, *1198 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d at 782. The fact that fingerprints are ostensibly in view of the public, as defendant argues, does not distinguish fingerprints from DNA identification. The issue is the identity of the individual, not whether the identifying feature is in the view of the public. Both fingerprinting and DNA identification provide a means of identifying convicted felons.
Finally, defendant argues that section 5-4-3 fails the balancing test because DNA extraction is intrusive. According to defendant, extraction of DNA is different from fingerprinting because it requires penetrating a person's skin and withdrawing bodily fluids. Yet, Illinois courts have universally found that drawing blood to gather DNA "involves only a minimal intrusion" and does not risk the health or safety of the individual. Garvin, 349 Ill. App.3d at 856, 285 Ill.Dec. 953, 812 N.E.2d at 783 (citing cases).
Because the State's interest outweighs a convicted felon's diminished privacy rights, and due to the fact that DNA sampling is only minimally intrusive, we find that section 5-4-3(a)(3.5) does not violate the fourth amendment's prohibition against unreasonable searches and seizures.
Although we have rejected the use of the special-needs exception, even if this court did apply it, the State points to a special need for the statute other than the general need to assist law enforcement. As stated in Hall:
"[W]hile there certainly is a relationship between genetic[-]marker[-]collection statutes and the solving of crimes, the immediate and primary purpose of these statutes is to fill and maintain a DNA database, a purpose `distinct from the regular needs of law enforcement.' [Citations.] This is because these statutes are not designed to discover and produce evidence of a specific individual's criminal wrongdoings. [Citations.] Rather, they essentially prove nothing. [Citations.] That is, a DNA sample is evidence only of an individual's genetic code, which does not, on its own, show the commission of a crime. [Citations.]" Hall, 352 Ill.App.3d at 549, 287 Ill.Dec. 736, 816 N.E.2d at 713-14.
Having found a special need exists, the second part of the test requires evaluating a defendant's privacy rights against the State's legitimate interests. Hall, 352 Ill.App.3d at 549, 287 Ill.Dec. 736, 816 N.E.2d at 714. Having already conducted this analysis in the balancing test and having concluded that the State's interests prevail, we find section 5-4-3(a)(3.5) is constitutional even under the special-needs test.

B. Authority To Impose Collection Fee
The trial court, as a condition of probation, required defendant submit to genetic testing at his own expense and pay an analysis fee of $200 in accordance with section 5-4-3(j) of the Unified Code (730 ILCS 5/5-4-3(j) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2778 (West)))). Defendant argues the court lacked authority to impose a collection fee in addition to the $200 analysis fee authorized by the statute. A trial court's determination on sentencing is reviewed for an abuse of discretion. People v. Campbell, 325 Ill.App.3d 569, 571, 259 Ill.Dec. 381, 758 N.E.2d 504, 505 (2001).
The State argues that defendant procedurally forfeited this argument by failing to raise it in the trial court. However, if a court lacks the authority to impose *1199 a cost, such order is void ab initio and may be attacked at any time. People v. Fales, 247 Ill.App.3d 681, 682-83, 187 Ill.Dec. 213, 617 N.E.2d 421, 423 (1993). Therefore, we will address defendant's argument.
A trial court may not assess costs unless such costs are authorized by statute. In re G.B., 88 Ill.App.3d 64, 68, 43 Ill.Dec. 410, 410 N.E.2d 410, 414 (1980), aff'd in part and rev'd in part, 88 Ill.2d 36, 58 Ill.Dec. 845, 430 N.E.2d 1096 (1981). The State points to three statutory provisions in support of its argument that the court had the authority to require defendant pay for the cost of collection of his DNA.
The State first argues that section 5-4-3(a) of the Unified Code implicitly requires that a defendant bear the cost of collection because it requires a defendant submit blood, saliva, or tissue. See 730 ILCS 5/5-4-3(a) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2775 (West))). However, section 5-4-3(a) simply mandates submission. It does not address the cost of such submission, other than the specific reference to the $200 analysis fee. "[S]tatutory provisions regarding costs must be strictly construed." Fales, 247 Ill.App.3d at 682, 187 Ill.Dec. 213, 617 N.E.2d at 422. Strictly construing the statute, we conclude it does not provide authority for a trial court to require a defendant to pay the cost of DNA collection.
The State further argues that the trial court had the authority to require defendant pay the costs of collection pursuant to section 5-4-3(j) of the Unified Code, which provides as follows:
"Any person required by subsection (a) to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for analysis and categorization into genetic marker grouping, in addition to any other disposition, penalty, or fine imposed, shall pay an analysis fee of $200. If the analysis fee is not paid at the time of sentencing, the court shall establish a fee schedule by which the entire amount of the analysis fee shall be paid in full, such schedule not to exceed 24 months from the time of conviction. The inability to pay this analysis fee shall not be the sole ground to incarcerate the person." 730 ILCS 5/5-4-3(j) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2778 (West))).
The State argues that the language "in addition to any other disposition, penalty, or fine imposed" provides the court the authority to impose the cost of collection on defendant. We disagree. A plain reading of this provision indicates that the statute simply provides for the imposition of the $200 analysis fee in addition to any other authorized penalty or fine. The statute does not by its own terms provide the authority for imposing the cost of collection on defendant. In fact, the legislature has demonstrated its ability to impose similar costs where such result is intended. See, e.g., 730 ILCS 5/5-5-3(g), (h) (West 2002) (providing that the cost of sexually-transmitted-disease testing "shall be paid by the county and may be taxed as costs" against defendants convicted of certain crimes); 730 ILCS 5/5-6-3(g) (West 2002) (providing that the trial court shall order a defendant sentenced to probation or conditional release pay the costs incidental to drug and alcohol testing and electronic monitoring in accordance with the defendant's ability to pay such costs).
The second statutory provision on which the State relies is section 5-6-3(b)(2) of *1200 the Unified Code (730 ILCS 5/5-6-3(b)(2) (West 2002)). The State argues that this statute permits a trial court to set conditions of probation, including payment of fines or costs. Section 5-6-3(b)(2) provides, in relevant part, as follows:
"(b) The [c]ourt may in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the [c]ourt require that the person:
* * *
(2) pay a fine and costs[.]" 730 ILCS 5/5-6-3(b)(2) (West 2002).
We have previously interpreted this section of the statute to require that the condition be reasonable and "related to the specific offense for which the defendant is sentenced." Campbell, 325 Ill.App.3d at 571, 259 Ill.Dec. 381, 758 N.E.2d at 505 (holding that trial court did not have the authority to reimpose fees from a previous conviction as a condition for a sentence of conditional discharge on an subsequent, unrelated offense). The State does not, however, indicate how the payment of the cost of blood, saliva, or tissue collection is a reasonable condition related to the nature of the offense (possession of a controlled substance) or defendant's rehabilitation.
In addition, while section 5-6-3(b)(2) of the Unified Code permits the imposition of fines and costs, it does not expressly authorize the assessment of the cost of DNA collection, which is neither a fine nor a court cost. The recovery of costs requires statutory authority, and any such statute must be strictly construed. People v. Winkler, 77 Ill.App.3d 35, 36, 32 Ill.Dec. 441, 395 N.E.2d 671, 672 (1979), quoting People v. Kluck, 70 Ill.App.3d 582, 584, 26 Ill.Dec. 917, 388 N.E.2d 918, 919 (1979). "Cost" is defined as "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees." Black's Law Dictionary 372 (8th ed.2004). "Fine" is defined as "[a] pecuniary criminal punishment or civil penalty payable to the public treasury." Black's Law Dictionary 664 (8th ed.2004).
In Winkler, 77 Ill.App.3d at 36, 32 Ill. Dec. 441, 395 N.E.2d at 672, the appellate court found that section 5-6-3(b)(2) authorized the imposition of court costs but did not authorize the imposition of jury fees and expenses as an incident of probation. The Winkler court found that whether jury costs could be imposed as a condition of probation was a matter for the legislature, not the courts. Winkler, 77 Ill.App.3d at 36, 32 Ill.Dec. 441, 395 N.E.2d at 672. Similarly, in the instant case, section 5-6-3(b)(2) fails to authorize the imposition of DNA collection upon defendant.
Finally, the State argues that the trial court had the authority to order defendant pay the cost of collection of blood, saliva, or tissue on the basis that it was a cost of prosecution under section 124A-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/124A-5 (West 2002)). Section 124A-5 provides as follows:
"When a person is convicted of an offense under a statute, or at common law, the court shall enter judgment that the offender pay the costs of prosecution. The costs shall include reasonable costs incurred by the [s]heriff for serving arrest warrants, for picking up the offender from a county other than the one in which he or she was convicted, and for picking up the offender from a location outside the State of Illinois pursuant *1201 either to his or her extradition or to his or her waiver of extradition." 725 ILCS 5/124A-5 (West 2002).
Even a generous reading of this statute fails to suggest that costs incurred in collecting blood, saliva, or tissue for DNA analysis constitutes a cost of prosecution. In addition, the cost of collecting DNA is not a "cost of prosecution," as it was incurred only after the prosecution and conviction occurred.
The imposition of the cost of DNA testing "is a matter for legislative enactment rather than judicial fiat." People v. Kluck, 70 Ill.App.3d 582, 584, 26 Ill.Dec. 917, 388 N.E.2d 918, 919 (1979). Hopefully the legislature will make the necessary amendments to grant the trial courts the authority to impose on defendants the cost of DNA collection. Until such time, however, trial courts are limited to imposing the $200 analysis fee under section 5-4-3(j) of the Unified Code (730 ILCS 5/5-4-3(j) (West 2002)).
Trial courts should possess the authority to impose all costs of prosecution. We recognize the legislature retains the prerogative to amend the statute to grant the trial courts the authority to impose on defendants the cost of DNA collection. Until such time, however, trial courts are limited to imposing the $200 analysis fee under section 5-4-3(j) of the Unified Code (730 ILCS 5/5-4-3(j) (West 2002)).

II. CONCLUSION
For the reasons stated herein, we find constitutional the requirement that defendant submit to genetic testing pursuant to section 5-4-3(a)(3.5) of the Unified Code (730 ILCS 5/5-4-3(a)(3.5) (West 2002) (as amended by Pub. Act 92-829, § 5, eff. August 22, 2002 (2002 Ill. Legis. Serv. 2775, 2776 (West)))). However, the trial court lacked the authority to order defendant to pay the cost of DNA collection. We remand with directions to modify the order of probation to vacate the condition that defendant pay the cost of DNA collection.
Affirmed in part and reversed in part; cause remanded with directions.
COOK, P.J., and TURNER, J., concur.