THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL KELLY, Defendant-Appellant.

Fourth District   No. 4—03—0775

Opinion filed October 31, 2005.

516

Daniel D. Yuhas and Nancy L. Vincent, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

In June 2003, at a trial *in absentia*, a jury convicted defendant,

Samuel Kelly, of unlawful possession of cannabis (more than 30, but less than 500, grams), a Class 4 felony (720 ILCS 550/4(d) (West 2002)). The trial court later sentenced him, again *in absentia*, to five years in prison. Upon defendant's motion, the court found defendant was entitled to a new sentencing hearing because he was in custody in another county at the time of his initial sentencing hearing. At the rehearing, the court sentenced defendant to 4 years in prison with credit for 63 days for time served. The court recommended defendant for impact incarceration. The court denied defendant's other posttrial and postsentencing motions.

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the statute (730 ILCS 5/5—4—3 (West 2002)) requiring convicted felons to submit blood, saliva, or tissue samples to the Illinois Department of State Police (State Police) is unconstitutional; (3) the trial court abused its discretion by ordering the reimbursement of attorney fees without determining defendant's ability to pay; and (4) he is entitled to an additional day of sentencing credit. We affirm as modified and remand with directions.

## I. BACKGROUND

The charges against defendant grew out of the facts primarily testified to at trial by Daniel Davis, a Pontiac police officer. He testified that on the evening of March 21, 2003, he participated in the execution of a search warrant conducted at 937 North Mill Street. The house was believed to be owned by Nathaniel Strong. Davis and other members of the tactical response team (TRT) approached the residence and, before officers could knock on the door, Roanna Donaldson opened it. The officers entered the house and observed defendant and Reginald Williams in the bedroom. Davis noticed a "strong odor of burnt cannabis in the air." Once the suspects were transported to jail, Davis noticed a backpack lying on the living room floor. The backpack had protruding from it a plastic bag containing what appeared to be cannabis. Davis had not seen the backpack when he entered the house, and it was not in the bedroom with defendant and Williams.

Donaldson testified that she lived at the North Mill residence with her boyfriend, Strong. She was not at home when defendant and Williams arrived. When shown a photograph of the backpack with the plastic bag lying on top, Donaldson said she did not recognize the backpack—it did not belong to her or Strong. She said the backpack was not at the house when she had left for work that morning. She said Williams and defendant were smoking a "blunt" (cannabis rolled in cigar paper) in her house before the police arrived.

On cross-examination, Donaldson said she knew Williams, whom

she identified as Strong's "main [drug] supplier," but she did not know defendant. She said Strong sold drugs out of the North Mill residence. Donaldson was not charged with any offense that evening and was not fingerprinted.

Kerry Nielsen, a forensic scientist with the State Police, testified that he analyzed the substance found in the backpack and confirmed the plastic bag contained 90 grams of cannabis.

Daron Bagnell, a Pontiac police officer, testified that he was part of the TRT. Like Davis, Bagnell noticed the odor of burnt cannabis in the house and found a partially burned blunt in the bedroom where defendant and Williams were first located. Bagnell said he first saw the backpack after the residence was secure and defendant, Williams, and Donaldson were detained. He said Williams was sitting on the floor in the living room and "kept his attention focused over to this one corner of the living room where this backpack [w]as sitting." When Bagnell approached the backpack, he saw a plastic resealable bag containing what appeared to be cannabis sticking out of the top.

On cross-examination, Bagnell estimated that the blunt contained three to four grams of cannabis.

Mike Willis, a detective with the Pontiac police department, testified that he was executing a warrant on Strong at the time the TRT executed the warrant at the North Mill residence. After he arrested Strong, Willis went to the residence to assist in the search. Bagnell pointed out the backpack to Willis, saying they "ha[d] got quite a bit of cannabis right there in plain view." Willis field-tested a small portion of the contents of the plastic bag and found the presence of cannabis.

Willis indicated he seized from the residence the blunt found in the bedroom, the backpack with the plastic bag containing cannabis found in the living room, and a box of Swisher Sweet cigars found on defendant's person. The blunt was rolled in Swisher Sweet cigar paper.

Later in the evening, with defendant's consent, Willis interviewed defendant. Defendant told Willis he rode to Pontiac with a friend of his who had planned to meet Strong. They first went to Strong's house, the North Mill residence. When Willis asked defendant about the plastic bag, defendant denied seeing it or knowing it was there. Willis said he asked defendant if a fingerprint analysis conducted on the bag would reveal the presence of defendant's prints. Willis said defendant "then put his head down and said, 'okay, I will be honest with you.'"

Willis then testified as follows:

> "He [(defendant)] then said, yes, he was familiar with the bag of cannabis, that they had been smoking from the bag, that he himself had rolled a blunt of cannabis with the Swisher Sweets from that

bag. And he said that he was smoking the actual blunt that he had just rolled from that bag when the TRT team [sic] came into the front door. He said he discarded the blunt on the floor in the bedroom which I later recovered."

Willis said the plastic bag was sent for fingerprint analysis and only an unidentified latent print was found.

At the close of its evidence, the State offered four exhibits that were admitted without objection and then rested. Defendant rested without presenting any evidence. After deliberations, the jury found defendant guilty of unlawful possession of between 30 and 500 grams of cannabis.

On July 28, 2003, the trial court conducted a sentencing hearing *in absentia* and imposed a five-year prison term with credit for two days for time served. The court then noted that defendant had an outstanding bond in the amount of $2,000, subtracted court costs, and awarded the remainder to the public defender as reimbursement for attorney fees.

On July 29, 2003, defendant appeared before the trial court in custody and reported he had been in the Cook County jail since July 5, 2003. Defendant said he did not appear at his trial because he did not have a ride to Livingston County.

On August 11, 2003, the trial court conducted a status hearing at which private counsel appeared on defendant's behalf. Upon entry of that attorney's appearance, the court vacated the appointment of the public defender. The parties agreed defendant was entitled to a new sentencing hearing because he had been in custody in Cook County at the time of his sentencing hearing.

On September 2, 2003, defendant filed a motion for a new trial, alleging primarily that the State failed to prove him guilty beyond a reasonable doubt and it was error for the trial court to conduct the trial *in absentia*. He also filed a separate motion to vacate the trial *in absentia*, pursuant to section 115—4.1(e) of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/115—4.1(e) (West 2002) (defendant's failure to appear was not his fault and was due to circumstances beyond his control)), alleging he had no personal knowledge of the date scheduled for trial.

On September 5, 2003, the trial court conducted a hearing on defendant's motions. In support, defendant testified that he did not appear at his trial because he was unable to secure transportation to Livingston County. The court denied defendant's motions and sentenced him to 4 years in prison with credit for 63 days served. Defense counsel moved *instanter* to reconsider the sentence, and the court denied defendant's request. The court neither vacated nor amended the reimbursement order. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

The State prosecuted defendant for the constructive possession of more than 30, but less than 500, grams of cannabis, a Class 4 felony. 720 ILCS 550/4(d) (West 2002). The central question at trial was whether defendant possessed the plastic bag containing cannabis found inside the backpack. Defendant claims Willis's testimony that defendant had told him he personally rolled a blunt using the cannabis from the bag was not sufficient to convict him. We disagree.

"It is the jury's function to determine the accused's guilt or innocence, and this court will not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of defendant's guilt." *People v. Frieberg*, 147 Ill. 2d 326, 359, 589 N.E.2d 508, 524 (1992). "When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Woods*, 214 Ill. 2d 455, 470, 828 N.E.2d 247, 257 (2005). "The requirement that a defendant's guilt be proved beyond a reasonable doubt does not mean that inferences flowing from the evidence should be disregarded." *People v. Schmalz*, 194 Ill. 2d 75, 81, 740 N.E.2d 775, 778 (2000).

■ The Cannabis Control Act provides in part that "[i]t is unlawful for any person knowingly to possess cannabis." 720 ILCS 550/4 (West 2002). Possession may be actual or constructive. Here, the jury was instructed on both. For actual possession, "the State must prove that the defendant had knowledge of the presence of the controlled substance and that he or she also had immediate and exclusive possession or control of the narcotics." *Woods*, 214 Ill. 2d at 466, 828 N.E.2d at 254.

On the other hand, "[c]onstructive possession may exist even where an individual is no longer in physical control of the drugs, provided that he once had physical control of the drugs with intent to exercise control in his own behalf, and he has not abandoned them and no other person has obtained possession." *People v. Adams*, 161 Ill. 2d 333, 345, 641 N.E.2d 514, 519-20 (1994). "Constructive possession exists without actual personal present dominion over a controlled substance, but with an intent and capability to maintain control and dominion." *Frieberg*, 147 Ill. 2d at 361, 589 N.E.2d at 524. "[W]hether there is possession or control [is a] question[ ] of fact to be determined by the trier of fact." *Schmalz*, 194 Ill. 2d at 81, 740 N.E.2d at 779.

■ Defendant was not in actual possession of the cannabis, and no

contraband was found on his person. Although there was no evidence indicating who owned the backpack or who carried it into the residence, there *was* evidence connecting defendant to the plastic bag. According to Willis, defendant said he had rolled a blunt using the cannabis in the plastic bag and was smoking that blunt at the time of the raid. Despite the fact that defendant's fingerprints did not appear on the bag, the evidence presented at trial was sufficient for a reasonable trier of fact to convict defendant of possession. The evidence indicated that defendant, at least temporarily, had physical and intentional control and dominion over the cannabis and had not attempted to abandon the bag to the exclusion of someone else's control. After viewing the evidence in a light most favorable to the prosecution, we affirm defendant's conviction.

## B. Constitutionality of the Statute Compelling Extraction of DNA From Convicted Felons

■ Defendant claims the ordered extraction of his deoxyribonucleic acid (DNA) violates his right to be free from unreasonable searches pursuant to the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6). Section 5—4—3(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—4—3(a) (West 2002)) requires that persons convicted of "any offense classified as a felony under Illinois law *** shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police." Whether a particular statute violates a defendant's constitutional rights is a question of law that we review *de novo*. *People v. Malchow*, 193 Ill. 2d 413, 418, 739 N.E.2d 433, 437 (2000).

Section 5—4—3(f) of the Unified Code sets forth the purpose of the mandatory DNA extraction as follows:

"The genetic marker grouping analysis information obtained pursuant to this Act shall be used only for (i) valid law enforcement identification purposes and as required by the Federal Bureau of Investigation for participation in a National DNA database or (ii) technology validation purposes." 730 ILCS 5/5—4—3(f) (West 2002).

This court recently addressed this issue in *People v. Hunter*, 358 Ill. App. 3d 1085, 831 N.E.2d 1192 (2005). There, in applying the balancing test, we found the State's interest outweighs a convicted felon's diminished privacy rights. *Hunter*, 358 Ill. App. 3d at 1093, 831 N.E.2d at 1198. We upheld the constitutionality of the statute, limiting our holding to section 5—4—3(a)(3.5) (730 ILCS 5/5—4—3(a)(3.5) (West 2002)). *Hunter*, 358 Ill. App. 3d at 1093, 831 N.E.2d at 1194.

Here, we apply the same analysis and reach the same conclusion, but expand our holding to encompass section 5—4—3 (730 ILCS 5/5—4—3 (West 2002)) in its entirety.

Other districts of the appellate court have considered the issue as well. See *People v. Jennings*, 364 Ill. App. 3d 473, 485-86 (2005) (First District); *People v. Redmond*, 357 Ill. App. 3d 256, 263, 828 N.E.2d 1206, 1212-13 (2005) (First District); *People v. Chamberlain*, 354 Ill. App. 3d 1070, 822 N.E.2d 914 (2005) (Third District); *People v. Foster*, 354 Ill. App. 3d 564, 821 N.E.2d 733 (2004) (First District); *People v. Butler*, 354 Ill. App. 3d 57, 819 N.E.2d 1133 (2004) (First District); *People v. Edwards*, 353 Ill. App. 3d 475, 818 N.E.2d 814 (2004) (First District); *People v. Smythe*, 352 Ill. App. 3d 1056, 817 N.E.2d 1100 (2004) (First District); *People v. Peppers*, 352 Ill. App. 3d 1002, 817 N.E.2d 1152 (2004) (First District); *People v. Ramos*, 353 Ill. App. 3d 133, 817 N.E.2d 1110 (2004) (First District); *People v. Hall*, 352 Ill. App. 3d 537, 816 N.E.2d 703 (2004) (First District); *People v. Garvin*, 349 Ill. App. 3d 845, 812 N.E.2d 773 (2004) (Second District), *appeal allowed*, 212 Ill. 2d 541, 824 N.E.2d 287 (2004); *In re Robert K.*, 336 Ill. App. 3d 867, 785 N.E.2d 562 (2003) (Second District); *People v. Calahan*, 272 Ill. App. 3d 293, 649 N.E.2d 588 (1995) (First District); *People v. Wealer*, 264 Ill. App. 3d 6, 636 N.E.2d 1129 (1994) (Second District). In *Garvin*, the Second District noted that every state and the District of Columbia had enacted similar mandatory genetic testing statutes, all of which have withstood similar constitutional challenges. See *Garvin*, 349 Ill. App. 3d at 853-54, 812 N.E.2d at 781.

The United States Supreme Court has held that the extraction of a biological sample is a search within the meaning of the fourth amendment. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616, 103 L. Ed. 2d 639, 659, 109 S. Ct. 1402, 1412-13 (1989). In considering whether the extraction of DNA is constitutional for the purposes set forth in their state's respective statutes, the courts nationwide have applied one of the two following approaches: a balancing test or a special-needs test. *Garvin*, 349 Ill. App. 3d at 855, 812 N.E.2d at 782. The special-needs test requires the government to demonstrate a need " 'beyond normal law enforcement' " to justify the warrantless search. *Garvin*, 349 Ill. App. 3d at 855, 812 N.E.2d at 782, quoting *Wealer*, 264 Ill. App. 3d at 11, 636 N.E.2d at 1133. Illinois courts have favored the balancing test over the special-needs approach (see *Garvin*, 349 Ill. App. 3d at 855, 812 N.E.2d at 782; *Redmond*, 357 Ill. App. 3d at 263, 828 N.E.2d at 1213) because the statute has an "ostensible law enforcement purpose," obviating the need to identify a purpose above and beyond the normal needs of law enforcement. *Wealer*, 264 Ill. App. 3d at 14, 636 N.E.2d at 1135.

Following our Illinois precedent, we too find the reasoning of the balancing approach more persuasive than its counterpart. The balancing test refers to balancing the State's interests in obtaining DNA profiles, the degree to which the DNA profiles actually advanced that interest, and the gravity of intrusion upon personal privacy to determine whether the search is reasonable. *Wealer*, 264 Ill. App. 3d at 14, 636 N.E.2d at 1135. We adopt the decision in *Garvin* and find the State's interests in deterring and prosecuting recidivist criminal activity, coupled with the scientific accuracy of identifying a person through his or her DNA, outweighs the minimal intrusion a convicted felon, whose identity is a matter of state interest, experiences from a blood draw. See *Garvin*, 349 Ill. App. 3d at 855-56, 812 N.E.2d at 782-83.

Defendant argues that Illinois precedent is contrary to the United States Supreme Court's holdings in *City of Indianapolis v. Edmond*, 531 U.S. 32, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000) (random search of car with drug-sniffing dog), and *Ferguson v. City of Charleston*, 532 U.S. 67, 149 L. Ed. 2d 205, 121 S. Ct. 1281 (2001) (test results of pregnant women in hospital for cocaine use reported to police), which required the government to identify a special need of law enforcement *before* performing a nonconsensual, warrantless, and suspicionless search and *before* a court should proceed to a balancing test. Other districts of our appellate court have previously addressed and dismissed the identical concern posed by defendant here. See *Ramos*, 353 Ill. App. 3d at 148-49, 817 N.E.2d at 1124-25; *Butler*, 354 Ill. App. 3d at 65-66, 819 N.E.2d at 1138-40.

*Edmond* and *Ferguson* set forth the requirement that the special-needs test be applied when evaluating the execution of a warrantless search. See *Edmond*, 531 U.S. at 41, 148 L. Ed. 2d at 343, 121 S. Ct. at 454; *Ferguson*, 532 U.S. at 84, 149 L. Ed. 2d at 220, 121 S. Ct. at 1291-92. However, the program or policy at issue in those cases was designed to affect members of the general public, not criminal defendants.

It is axiomatic that the government cannot randomly (without suspicion or cause) fingerprint or photograph law-abiding members of the general public. Those who have become enmeshed in our criminal justice system, by way of a criminal conviction, are distinguishable from other members of our society. The United States Supreme Court has held that a convicted criminal experiences a diminished expectation of privacy than that normally afforded to individual citizens. *United States v. Knights*, 534 U.S. 112, 118-19, 151 L. Ed. 2d 497, 505, 122 S. Ct. 587, 591 (2001) (those in prison, on probation, parole, or conditional release have diminished expectations of privacy).

Because defendant, as a convicted felon, experiences a diminished expectation of privacy, the reasonableness of a warrantless search can

be analyzed outside the strictures of the special-needs approach. See *Ramos*, 353 Ill. App. 3d at 153, 817 N.E.2d at 1128; *Butler*, 354 Ill. App. 3d at 65-66, 819 N.E.2d at 1139-40, citing *United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004) (special needs does not apply to conditional releasee's extraction of DNA under federal law), and *Knights*, 534 U.S. at 122, 151 L. Ed. 2d at 507, 122 S. Ct. at 593 (Court rejected special-needs test where probationer was required to submit to a warrantless search at any time as condition of probation).

For the foregoing reasons and consistent with all of the Illinois courts that have thus far addressed the issue, we find section 5—4—3 of the Unified Code (730 ILCS 5/5—4—3 (West 2002)) is not unconstitutional. The statute does not violate the fourth amendment of the United States Constitution or article I, section 6, of the Illinois Constitution. We affirm the court's order requiring defendant submit to genetic testing.

### C. Reimbursement of Attorney Fees

■ Defendant next claims the trial court erred in ordering payment to the public defender from defendant's forfeited bond without first conducting a hearing to determine if defendant had the ability to pay. On July 28, 2003, at the sentencing hearing held *in absentia*, the trial court ordered the following:

> "[Defendant] has $2,000, and that bond was never forfeited. We have Mr. Casson[,] who ably represented the defendant at trial. We need to do something with that bond. I can take all of it as attorney[ ] fees. I don't find a forfeiture order there.
>
> * * *
>
> So, it is ordered in [No. 0]3—CF—87 that court costs, crime victim's fund [fines totaling $890] are taken from the $2,000; and the balance is ordered taken for attorney[ ] fees for the fine representation by Mr. Casson."

Without determining the reasonableness of the fee, the trial court ordered $1,110 be paid to the public defender's office as reimbursement. Defendant contends the court erred in ordering the fees without conducting a hearing on his ability to pay pursuant to section 113—3.1 of the Code of Criminal Procedure (725 ILCS 5/113—3.1 (West 2002)). Our supreme court has explicitly held that it is error for a trial court to order reimbursement without conducting an ability-to-pay hearing. *People v. Love*, 177 Ill. 2d 550, 687 N.E.2d 32 (1997).

*Love*, which was decided in the context of section 113—3.1, not section 115—4.1(a), of the Code of Criminal Procedure, is distinguishable from defendant's case. Section 113—3.1 allows for reimbursement of court-appointed attorney fees only after the trial court determines at a hearing whether the fees are reasonable and whether

the defendant has the ability to pay. See 725 ILCS 5/113—3.1 (West 2002). This section does not apply when a defendant's trial was conducted *in absentia.*

Section 115—4.1(a) of the Code of Criminal Procedure (725 ILCS 5/115—4.1(a) (West 2002)), which governs proceedings in the defendant's absence, sets forth in relevant part as follows:

> "The court, at the conclusion of all of the proceedings, may order the clerk of the circuit court to pay counsel such sum as the court deems reasonable, from any bond monies which were posted by the defendant with the clerk, after the clerk has first deducted all court costs."

Under this section, the defendant does not pay the fees. The clerk of the circuit court pays the fees out of the bond initially posted, and later forfeited, by the defendant. The fact that a defendant caused his bond to be forfeited by failing to appear at trial makes his ability to pay irrelevant and, consequently, the requirements of section 113—3.1 and *Love* inapplicable.

To comply with the statutory mandate that the fees be reasonable, the trial court should conduct a hearing to determine the award. See *People v. Maya,* 105 Ill. 2d 281, 289, 473 N.E.2d 1287, 1291 (1985) (remanded for hearing to determine reasonableness of fees). In determining the reasonableness of a fee, the court should consider (1) the time spent and the services rendered, (2) the attorney's skill and experience, (3) the complexity of the case, (4) trial costs, and (5) overhead expenses. *Maya,* 105 Ill. 2d at 289, 473 N.E.2d at 1291. A reasonable fee should be awarded after the costs and before the fines are deducted from the forfeited bond amount. *People v. Barraza,* 193 Ill. App. 3d 655, 661, 550 N.E.2d 59, 63 (1990).

In this case, the trial court did not address any of the individual factors set forth above nor did it make a summary determination of the reasonableness of the fees. The court first subtracted the ordered fines and costs from defendant's forfeited bond and then awarded the remaining amount as reimbursement to the public defender. Procedurally, the court did not comply with the statute in determining the reasonableness of the award or with case law in awarding fees before the fines were deducted.

The State contends defendant forfeited review of this issue by failing to raise it in the trial court. Defendant responds, relying on *Love,* 177 Ill. 2d 550, 687 N.E.2d 32, by arguing that we should review the matter as plain error. We decline to do so.

In *Love,* the court reviewed a reimbursement-of-attorney-fees order despite the defendant's procedural default in raising it for the first time on appeal. The court held that because "the trial court

wholly ignored the statutory procedures" prior to ordering a reimbursement of fees, fairness dictated that waiver should not be applied. *Love*, 177 Ill. 2d at 564, 687 N.E.2d at 39. The court held that the trial court's failure to conduct a hearing to determine whether the defendant had the ability to pay the attorney fees as ordered was unfair to the defendant and justified reversal. *Love*, 177 Ill. 2d at 564, 687 N.E.2d at 39. The court found that the hearing requirement set forth in section 113—3.1 of the Code of Criminal Procedure (725 ILCS 5/113—3.1 (West 1996)) was enacted as a procedural "safeguard designed to insure that a reimbursement order entered under that section meets constitutional standards." *Love*, 177 Ill. 2d at 564, 687 N.E.2d at 39. Because the defendant was denied a procedure to which he was entitled and because that denial may have prejudiced him, the court declined to enforce the "waiver rule." *Love*, 177 Ill. 2d at 564, 687 N.E.2d at 39.

The same is not true here. Although the trial court "wholly ignored the statutory procedures" set forth in section 115—4.1(a) of the Code of Criminal Procedure (725 ILCS 5/115—4.1(a) (West 2002)), we cannot say defendant was prejudiced by the court's decision in order to justify an application of the plain-error doctrine. Pursuant to *Barraza*, the court was required to first deduct costs, then determine a reasonable fee before deducting that amount from defendant's forfeited bond. Then, if any amount remained, the court should order payment of the fines. See *Barraza*, 193 Ill. App. 3d at 661, 550 N.E.2d at 63.

According to the reimbursement order entered in the case *sub judice*, defendant's forfeited bond was sufficient to cover payment for all of defendant's fines and costs *and* his attorney fees. We do not see how the trial court's error substantially affected defendant's rights to justify reversal in light of his failure to object in the trial court. See *People v. Hausman*, 287 Ill. App. 3d 1069, 1071, 679 N.E.2d 867, 869 (1997) (plain-error rule applies when the error is so fundamental a defendant may have been denied a fair sentencing hearing); *People v. Herron*, 215 Ill. 2d 167, 177, 830 N.E.2d 467, 474 (2005) (purpose of plain-error doctrine is to protect the rights of the defendant). Because defendant would not benefit from a hearing on remand, we find his failure to object to the order in the trial court precludes our review under the plain-error doctrine.

## D. Additional Credit

■ Finally, defendant contends he is entitled to an additional day of sentencing credit based upon a miscalculation of the time spent in custody. The trial court awarded defendant 63 days' credit for time

served between March 21 and 22, 2003, and July 6, 2003, to September 5, 2003. Because he is entitled to credit for any part of a day that he is in custody (see *People v. Steskal*, 236 Ill. App. 3d 821, 823, 602 N.E.2d 977, 978-79 (1992)), defendant claims he is entitled to 64 days' credit. The State concedes the error, and we accept the State's concession.

Based upon the amount of time defendant spent in custody, we agree with the parties and find he is entitled to 64 days' credit against his sentence. Accordingly, we modify the sentence and remand this cause to the trial court to amend the written judgment of sentence to reflect credit for 64 days served with credit for an additional $5 toward his fines.

### III. CONCLUSION

For the reasons stated, we affirm defendant's conviction and remand to amend the judgment of sentence to reflect credit for 64 days of prejudgment incarceration and the concomitant monetary credit toward the fines imposed.

Affirmed as modified; cause remanded with directions.

TURNER and STEIGMANN, JJ., concur.